## PANHANDLE REFINING CO. v. BENNETT.
### (No. 2214.)

Court of Civil Appeals of Texas. El Paso.
Jan. 17, 1929.

Motion for Leave to File Out of Time Overruled Feb. 14, 1929.

J. E. Winegart, of Wichita Falls, and R. D. Blaydes, of Ft. Stockton, for appellant.

Williams & Jackson, of Ft. Stockton, for appellee.

HIGGINS, J. Appellant is engaged in manufacturing and marketing gasoline in wholesale quantities, its refinery being at Wichita Falls, Tex. Appellee is a retailer of gasoline, operating a filling station at Ft. Stockton, Tex., doing business under the name of O. S. T. Filling Station. Over a period of time extending from in January, 1924, to in January, 1926, appellee purchased various carloads of gasoline from appellant which he retailed at his filling station. The state tax upon the same, of one cent per gallon, amounting in the aggregate to $1,308.48, was not paid, and appellant later was compelled to pay same to the state.

This suit was brought by appellant to recover of appellee the amount so paid upon the theory that under the contracts of sale appellee was bound to reimburse appellant therefor, and upon the further theory that

appellee represented that he was not selling the gasoline to the consumer, assumed liability for such taxes, and therefore was estopped to assert that he was a retailer and not liable to the state for such tax. The jury was peremptorily instructed to find for defendant. The judgment recites that: "After hearing the pleadings read, the evidence, it was agreed by the counsel for both parties that there was no issue of fact to be submitted to the jury, but that the question to be determined was only one of law."

The terms of the contracts under which the different sales by appellant to appellee were made were evidenced by telegrams. Appellee would telephone or wire for price quotations, appellant would reply by wire, and thereupon appellee would wire his order. The telegrams of October 1, 1924, are representative of the various contracts of purchase. These telegrams read as follows:

"Wichita Falls, Texas, Oct. 1, 1924.
"O. S. T. Filling Station, Ft. Stockton, Texas.
"Quote six three-quarters f. o. b. Wichita Falls car New Navy Gasoline.
"Panhandle Refining Company."

"Ft. Stockton, Texas, Oct. 1, 1924.
"Panhandle Refining Co., Wichita Falls, Texas.
"Ship car as per quotation, ten thousand gallons. Ship open. Will forward check as soon as it arrives.
"O. S. T. Filling Station,
"E. W. Bennett."

Upon receipt of the order appellant would ship the gasoline to appellee. Usually draft would be drawn upon appellee with the bill of lading attached and handled through banks in the usual manner. Appellant's sales manager testified:

"Practically all the gasoline ordered by Mr. Bennett was something along that line, and we quoted him f. o. b. Wichita Falls. When we received his orders we shipped them out and immediately mailed out the confirmation order, and we did not wait until we got that back to ship the gasoline. Those confirmations got to him before it was possible for him to get the car of gasoline, because the draft and bill of lading was sent around through different banks, and would get to Fort Stockton several days after the confirmation got here. * * *

"When we said f. o. b. Wichita, that was meant to tell Mr. Bennett that would be the cost of the gasoline with the freight added; so far as the freight and gasoline was concerned that would be it. There was nothing said about the tax in that."

Appellant relies upon provisions in the confirmations of sales as imposing liability upon appellee which read:

"Any tax or charge imposed by governmental authority whereby the cost of the material, covered by this contract, may be increased to the seller shall be added to the price stipulated herein.

"Seller does not guarantee correctness of freight rates.

"This gasoline is being sold to wholesale marketer who represents that he is not selling same to customer, and buyer hereby assumes liability for any tax which may be held to be due by virtue of this sale, hereby agreeing to protect, indemnify and save harmless seller from any tax on this sale.

"Panhandle Refining Company
"Per G. W. R. (and some by W. E. Campbell).
"Accepted:
"O. S. T. Filling Station, Buyer,
"By E. W. Bennett."

The sales manager also testified: "We sent him out a confirmation order that didn't have that clause in it; those were the old forms of confirmation. We never called his attention to the fact that we quit billing that out to him with that added and there was no agreement between Mr. Bennett and the Company that he would not pay it. We changed with everybody at the same time. We never notified any one that we expected them to pay the tax. So far as I know, the notice that was given was contained in the printed matter on the confirmation order. We did change the confirmation order, but I could not say whether the attention of our customers was called to it or not."

Later appellant commenced to stamp also upon the invoices a notice to the effect that the consignee would be required to pay the state sale tax.

Upon receiving the first invoice bearing this indorsement, appellee at once protested and ceased doing business with appellant.

█ It is the theory of appellant that the telegrams were mere preliminary negotiations which were merged in the confirmations later signed and accepted by appellee, and the confirmations constitute written contracts governing the rights of the parties, and the terms thereof cannot be varied except by appropriate averments of fraud, accident, or mistake.

We do not agree with the view that the telegrams were mere negotiations. On the contrary, they evidence a complete meeting of the minds of the parties upon the price and other terms of the sale. They were so acted upon because the gasoline was always shipped out without awaiting the return by appellee of the accepted confirmation.

██ The confirmations add one cent per gallon to the prices f. o. b. Wichita Falls as quoted and accepted in the telegrams. The question thus arises: Shall the written contracts evidenced by the telegrams control, or that evidenced by the confirmations? The decision of this question is governed by the rule thus stated in 6 R. C. L. 917: "If a written contract is altered by agreement, such agreement must have the essential ingredients of

a binding contract; and although it may have reference to, and indeed embody, the terms of the written contract, yet it must be founded on a new and distinct consideration of itself."

This rule was applied in Barlow v. Cotulla (Tex. Civ. App.) 141 S. W. 292, where it was said: "We have given due consideration to the well-considered brief and argument of counsel, but to agree with him would compel us, in effect, to hold valid a new contract varying the terms of a previous binding contract upon the same subject-matter, without a new consideration. This we cannot hold." This case was affirmed by the Supreme Court. See 107 Tex. 37, 173 S. W. 874. See, also, Kahle v. Plummer (Tex. Civ. App.) 74 S. W. 786; Missouri, K. & T. Ry. Co. of Texas v. Carter, 9 Tex. Civ. App. 677, 29 S. W. 565.

As to theory of estoppel, the record shows clearly that appellant knew appellee was going to sell the gasoline at retail. In addition to other evidence upon the issue, it is conclusively shown by a letter from appellant's sales manager, written just before appellee began to buy gasoline, wherein it was said: "We know that you are going to need a high grade of gasoline to put through your filling station in order to secure for yourself the trade at that station without too much overhead in the matter of solicitation. * * *"

The record showing a want of consideration for the altered agreements evidenced by the confirmations, and the facts not supporting the plea of estoppel, the judgment should be affirmed. It is so ordered.