F. P. ADAMS ET AL V. RONALD B. DUNCAN ET AL.

No. A-1722. Decided November 17, 1948.
Rehearing overruled December 31, 1948.
(215 S. W., 2d Series, 599.)

*Lamar Hart,* of Beaumont, *J. T. Adams,* of Orange, *T. Gilbert Adams,* of Jasper, *Fountain, Cox & Gaines, John G. Seaman and Joyce Cox,* all of Houston, for petitioners.

The Court erred in holding that the Adamses are estopped to assert the invalidity of the Ford deed because they accepted it and used it in the Bilbo and Burrell Litigation. Clark v. Gauntt 138 Texas 558, 161 S. W. (2d) 270; Taliley v. Howsley, 142 Texas 81, 176 S. W. (2d) 158; Permiam Oil Co. v. Smith, 129 Texas 413, 73 S. W. (2d) 490, 107 S. W. (2d) 564.

*George P. Kirkpatrick* and *A. M. Huffman,* both of Beaumont, for respondents.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This is an action in trespass to try title filed by F. P. Adams et al, petitioners, against William Duncan et al, respondents. A trial court judgment for petitioners was reversed and remanded by the court of civil appeals. 210 S. W. (2d) 180.

In 1842 the 640 acres of land in controversy was patented by the Republic of Texas to William Duncan, of Philadelphia, Pa., as the William Duncan Survey, Abst. 136, Jasper County, Texas.

Duncan still owned the land when he died in Philadelphia, in 1864, testate. His will was duly probated in Philadelphia and letters testamentary were granted to his widow, two sons, a nephew, and a grandson named John G. Ford. Under the will these executors or a majority of them were "fully authorized, empowered and directed to grant, bargain, sell and convey all my right, title, interest, claim and demand of, in and to all my real and personal estate."

All executors, except Ford, died between 1867 and 1878. No ancillary administration on Duncan's estate was ever had in Texas, but a certified copy of the Pennsylvania probate proceedings, including Duncan's will, was filed for record in Jasper County, Texas, in 1901.

On July 31, 1906, in consideration of $4,480.00 cash paid, John G. Ford, as sole surviving executor of the estate of William Duncan, deceased, executed a deed conveying the 640-acre William Duncan Survey to W. J. B. Adams, R. F. Adams and Abel Adams, from whom petitioners claim title as heirs and legal representatives of heirs. In this deed Ford reserved one half the mineral estate in the 640 acres for the benefit of himself and the other heirs of William Duncan.

At the time this deed was executed title by limitation to the William Duncan Survey was being asserted by one Burrell and one Bilbo. So, on March 24, 1908, the Adamses, grantees in the Ford deed, sued Bilbo, Burrell and others in trespass to try title to recover the land. In that litigation 160 acres of the land was awarded to Bilbo and the remainder to the Adamses. See Adams v. Burrell (Civ. App.), 127 S. W., 581, and Burrell v. Adams, 104 Texas, 183, 135 S. W., 1156. In that suit the Supreme Court says that the Adamses "exhibited a perfect title to all land in controversy, and, unless defeated by limitation, were entitled to recover against all the defendants all the land in suit." (135 S. W., p. 1157.) The record showed that they had acquired their title to the Duncan Survey in 1906 by the deed from Ford, executor, above described, which they introduced in evidence over the objection of the defendants. (127 S. W., 583.) And in their brief filed in the court of civil appeals in support of that appeal they said: "The plaintiffs bought from the executor of William Duncan's estate, and the validity of their title is not disputed. (See Patent p. 114, Will of Duncan, p. 106, Deed to Adams, 104 Sten. Rep.)" Moreover, in the trial of the case at bar, much of the testimony given in the Adams-Burrell trial was offered in evidence. Petitioners offered excerpts from the testimony of R. F. Adams, one of the grantees in the Ford deed, in which he swore: "I think we bought the Duncan survey in 1906. We had never owned it before unless we owned a part of it when we bought this place here that Burrell lived on. We didn't claim it at that time." Respondents offered the testimony of John G. Ford, executor, given by deposition in that suit in 1908 and introduced by the Adamses, in which he identified himself as one of the executors of the will of William Duncan, deceased, and said that all the other executors named had died from 1867 to 1878; that "since the death of the other Executors I have acted in the capacity of Executor and the other heirs have acquiesced in such acts and ratified them by accepting their shares of the consideration money received for real estate sold by me as Executor"; that "the estate of the said Wm. Duncan has not yet been finally settled, there have been three accounts filed; I have not yet been discharged as such Executor"; and that in 1879 he sold certain property in Philadelphia and in 1901 had sold 640 acres in King County, Texas, belonging to the William Duncan estate. Also, in the trial of this case petitioners offered numerous instruments subsequently executed by the Adamses, grantees in the Ford deed, and in some of them the land is referred to as "more particularly described in a deed from Wm. Duncan by Executors, to W. J. B. Adams et al."

Then, in 1945, came this suit, filed by petitioners against respondents as the heirs and legal representatives of the devisees under the will of William Duncan and as the successors to the William Duncan title. Following the usual allegation in trespass to try title, petitioners specially pleaded title by limitation of 3, 5, 10 and 25 years. Respondents answered by plea of not guilty and then by cross action prayed judgment against petitioneres for title and possession on allegations in trespass to try title. In answer to this cross action petitioners pleaded not guilty and by special pleas again set up claim to title under limitation of 3, 5, 10 and 25 years.

Before trial the respondents, as cross-plaintiffs, filed a disclaimer of any title in the William Duncan Survey except to one half the mineral estate which, they alleged, was reserved to them by the terms of the Ford deed, above described.

■ Attacking the Ford deed as void, petitioners filed a motion asking the trial court to note judicially that under the laws of the State of Pennsylvania the power of sale given an executor by will becomes exhausted when the purpose of the power has been accomplished. Respondents pleaded that by taking the deed from Ford, placing it of record and using it in the Burrell-Bilbo litigation to protect their title from trespassers, petitioners were estopped to question its validity. The court of civil appeals sustained that contention and petitioners insist that it erred in so holding. We have concluded that the point must be overruled.

In the first place, we cannot say that Ford's deed as executor was void because the purpose of his power had been accomplished and therefore had been exhausted. According to his testimony in 1908 given in a deposition taken and offered by the Adamses in the Adams-Burrell litigation and in no way disputed in this case, Ford continued to act as executor after the death of his last co-executor in 1878, with the acquiesence of the Duncan heirs, and had in 1908 "not yet been discharged as such Executor" because "the estate of the said Wm. Duncan has not yet been finally settled"; and, as such executor, he had sold lands 'in King County, Texas, as late as 1901, turning the consideration over to the Duncan heirs. In 1908 this seemed adequate proof that his powers as executor had not become exhausted by 1906, therefore we are unable to say now, in a suit between the heirs and privies of the grantor and grantees in the Ford deed, that it had become so exhausted.

■ Petitioners further attack the power of Ford to execute the deed in question because he had not taken out ancillary letters

in Texas. Art. 8305 R. S., 1925, provides that when a foreign will recorded in Texas gives an executor power to sell real estate situated in this state no order of court shall be necessary to authorize the executor to make sale and execute a proper conveyance. But petitioners suggest that it was not in effect in 1906. It is true that the article was not enacted until 1915, but by reference to the Acts of 1915, General Laws, p. 120, we observe that Art. 8305 was enacted as Art. 7878a, of the Revised Statutes of 1911, and that following it, as Art. 7878b, appeared this provision: "All sales and conveyances of real and personal property within this state which have been heretofore made by executors * * * under foreign wills, duly filed and recorded, * * * where such will confer upon the executors * * * the power to sell such real or personal property, be and the same are hereby validated, and the record of such conveyance * * * heretofore made shall have the same effect as if they were made and recorded after the passage of this Act, and that all laws and parts of laws in conflict herewith are hereby in all things repealed." A certified copy of the Pennsylvania probate proceedings, together with the will giving Duncan's executors the power of sale, having been duly filed in Jasper County, the Act of 1915, supra, validated the sale by Ford without ancillary proceedings in Texas. Smith et al v. Allbright et al (Civ. App.), 261 S. W. 461. Since the Legislature had the power to dispense in advance with the necessity of an ancillary probate proceeding, it could retrospectively dispense with that requirement. Parker v. Harris Co. Drainage Dist., (Civ. App.), 148 S. W., 351 (er. ref.), and authorities there cited.

■ Since the Ford deed was not void, we think its effect is settled by Greene et al v. White et al, 137 Texas, 361, 153 S. W. (2d) 575. Although they did not sign the deed, grantees Adams accepted it and subsequently used it to their advantage; so they and petitioners, their privies, were concluded by its recitals and by the reservations therein in favor of the Duncan estate and its heirs, the respondents. Moreover, the deed's recitals that it conveyed the surface estate and only one half the mineral estate and reserved one half the mineral estate to Ford and to the heirs and devisees of William Duncan, deceased, were contractual provisions that defined "the character and extent of the ownership and interests" of both grantors and grantees in the land.

It is true that this court said in Greene et al v. White et al, supra, that if at the time the deed in question there was executed the grantees held title by limitation, the deed from grantors

(reserving the mineral estate) was wholly ineffectual. But that holding was grounded on the theory that the land was the homestead of the grantees and, as a matter of course, the instrument could not deprive them of any interest therein if they already owned it whether by limitation or otherwise, since they did not sign and acknowledge it as the law requires in any conveyance of the homestead. But here we have no such question; it is in no way claimed that the Duncan Survey was the homestead of the grantees Adams or any of them when they accepted the deed from Ford.

The grantees not only accepted the deed but they recorded it; they used it in subsequent litigation to prove record title in themselves, and one of them testified that they bought the land by that deed in 1906 and never owned it before; and they referred to it thereafter in conveyances affecting the land. Therefore, neither they nor petitioners as their heirs and successors in title can now be heard to say that they are not bound by its contractual obligations.

An that disposes of petitioners' contention that they had acquired limitation through the possession of Burrell, their tenant, prior to 1906, as adjudged to them in the Burrell-Bilbo litigation above referred to, for which reason that 160 acres should be considered separately from the remainder of the Duncan Survey in this suit, in adjudicating their rights in the mineral estate. We see no merit in that contention. Whatever their title may have been and whatever its source prior to 1906, they contracted away one half the mineral estate in the whole survey by their acceptance of the Ford deed.

Other points relate to a tax deed held by the Adamses. In 1914 the State of Texas sued W. J. B. Adams, R. F. Adams, Abel Adams, William Duncan and his unknown heirs, John G. Ford as executor of the Duncan estate, and others for taxes alleged to be due on the Duncan Survey for the years 1902, 1903, 1904, 1906 and 1907, in the total sum of $37.59 plus $34.82 interest and costs. The petition in that case is not shown, but in the judgment foreclosing the state's tax lien the land is described as four hundred eighty (480) acres of land lying and being situated in Jasper County, Texas, out of a 640-acre survey patented to Wm. Duncan by the Republic of Texas, Feb. 26th, A. D. 1842, Abstract No. 136, Patent No. 173, Certificate No. 348, Vol. 1. When petitioners offered that judgment respondents objected that "it is a void judgment for the reason that it does not describe any definite tract of land." The trial court later concluded that it was void on the ground stated and that

conclusion was approved by the court of civil appeals. The judgment undoubtedly was void. Greer v. Greer, 114 Texas, 528, 191 S. W. (2d) 848, and the authorities there cited.

■ But petitioners insist that the description in the judgment can be aided and thereby validated by reference to the citation, the order of sale and the sheriff's deed to the Adamses, who became the purchasers at the tax sale. Both in the citation and order of sale, the land is described as in the judgment with this addition: "Said 480 acres of land being all of the above named survey save and except 160 acres in the northeastern part of said survey, which said 160 acres is known as the T. A. Bilbo land." We think this language added nothing to the description in the judgment. It is substantially similar to that which we held insufficient in Wooten et al v. State, 142 Texas, 238, 177 S. W. (2d) 56.

The sheriff's deed did describe the land by metes and bounds, that is, by first so describing the Duncan Survey and then by so describing the 160 acres known as the Bilbo land, which he excepted from the conveyance. But all the sheriff had before him from the judgment roll was the judgment, the citation and the order of sale. He had no power or authority to go beyond the order of sale to determine what he was commanded to sell. Mills v. Pitts, 121 Texas, 196, 48 S. W. (2d) 941, 84 A. L. R. 319.

Therefore, we overrule the petitioners' contention that they acquired title to the mineral estate reserved in the Ford deed, by the sheriff's deed in the 1914 tax sale.

It follows, also, that we must overrule petitioners' point that the court of civil appeals erred in holding that the trial court's Finding of Fact No. 17 had no support in the evidence. That finding was that in the 1914 tax suit the state sued "for taxes due on the Duncan Survey, except the Bilbo 160 acres", recovered judgment and sold "this 480 acres". As we have already stated, that judgment foreclosed the tax lien merely on 480 acres *out of* the Duncan Survey.

■ Another contention made by petitioners is thus stated and discussed by the court of civil appeals: "Appellees say that if the void tax deed was ineffective as a muniment of title, nevertheless it served as notice that they were repudiating the Ford deed and the mineral reservation therein and that they were claiming the entire estate in the 480 acres described in the tax deed. With this contention we do not agree. The Adams family were in possession under the Ford deed. They were co-tenants

with the Duncans as to the minerals. Under the authority of Terry v. Terry, 228 S. W. 299, and Chapman v. Dickerson, 223 S. W. 318, such filing of the void tax deed could not operate as such notice of repudiation, unless the Duncans had actual notice of such repudiation, or unless the subsequent acts of ownership title in their character as to require the Duncans to take notice tile in thei rcharacter as to reequire the Duncans to take notice of the nature and extent of their claim. The Adams family have not shown such notice or acts of ownership and dominion on their part. All their actions in connection with the Duncan Survey since the filing of the tax deed have been those which they could perform under the Ford deed. This character of use did not effect a limitation title against their co-tenants." We approve that holding. Occupancy of the land either by the petitioners themselves or through tenants was not inconsistent with ownership of the mineral estate in someone else, therefore it could not amount to notice to the Duncans that petitioners were asserting any ownership of the minerals adverse to that recognized by the Ford deed as remaining in respondents.

■ It follows that the court of civil appeals did not err in holding the trial court's Finding of Fact No. 16 was "not supported by any evidence of possession of minerals" and showed no repudiation of the cotenancy relation. That finding was that in 1908 and continuously thereafter the Adamses repudiated all claims of others in 480 acres of the Duncan Survey and openly and notoriously with a tenant in possession claimed the fee simple title thereto.

■ Another point urged by petitioners grows out of their loss of 160 acres of the land to Bilbo in their litigation with him and Burrell in 1908 and the refusal of the court of civil appeals to give that fact special consideration in passing on the effect of the Ford deed as well as their claim of limitation title. They insist that, under the trial court's finding, Bilbo had peaceable and adverse possession, living on, cultivating, using and enjoying it from 1890 to 1926; that, therefore, he had limitation title to it in 1906; and that when they acquired it from Bilbo and his grantee in 1926 they acquired the superior title to that much of the Duncan Survey free of the mineral reservations of the Ford deed. Since the Duncans were not parties to the Adams-Bilbo suit, they were not bound by its judgment awarding 160 acres of the survey to Bilbo. Kirby Lumber Corporation v. Southern Lumber Co., 145 Texas, 151, 196 S. W. (2d) 387, 169 A. L. R. 174. And the Adamses were charged with knowledge of that when they took deeds to the Bilbo title in 1926. Moreover, they took those deeds in the face of the contract they made with

the Duncans in 1906 that the Duncans had a half interest in the mineral estate; which contract was still valid and outstanding. And if that agreement is to be given the force and effect that Greene et al v. White et al, supra, says it must, they took the Bilbo title subject to that contractual obligation. If it bound them in 1906, it bound them in 1926 and it binds them now.

Therefore, the entire Survey was properly considered together in passing on petitioners' claims; and, for the reasons already stated in discussing petitioners' claim of limitation title to the mineral estate in the remaining 480 acres of the Duncan Survey, they have acquired no title by limitation to the minerals in the Bilbo 160 acres as against the claim of their co-tenants, respondents, to one half interest. There was no showing that the Duncans had any notice that their estate was being claimed adversely by the Adamses nor was there any such open and notorious assertion of claim thereto as to charge them with such notice. See Bruni v. Vidaurri, 140 Texas, 138, 166 S. W. (2d) 81.

The judgment of the court of civil appeals is affirmed.

Opinion rendered November 17, 1948.

Rehearing overruled December 31, 1948.