**KING et al. v. HESTER et al.**

No. 14039.

United States Court of Appeals
Fifth Circuit.

Dec. 17, 1952.

808

Geo. M. Hopkins and George M. Hopkins, Jr., Denton, Tex., for appellants.

Leslie Humphrey, Wichita Falls, Tex., Killough K. Smith, Jr., and Hugh B. Smith, Fort Worth, Tex., T. H. Yarbrough, Bowie, Tex., for appellees.

Before HUTCHESON, Chief Judge, and BORAH and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

Plaintiffs below, appellants here, some claiming as heirs, others as assignees of the heirs, of either F. E. Taylor, William Fanning, or James M. Grigsby, combining in one suit sixteen separate tracts in Montague County, Texas, brought this suit against appellees to recover fractional in-

terests in minerals which they claimed had been granted to, or reserved by, Taylor, Fanning and Grigsby, or either of them, some seventy years before.

In addition to the appellees, the complaint named as defendants Garland Luttrell, et al., also claiming to be heirs of Taylor, Fanning, or Grigsby. Making common cause and in effect aligning themselves with the plaintiffs, they asserted against the defendants, the appellees here, fractional interests in the minerals for which plaintiffs sued.

The claims of plaintiffs and their co-claiming defendants were that, by and in certain instruments referred to and relied on by them, the mineral interests sued for had been segregated, and the appellees who were the owners of the several tracts of land described in the complaint, except as to these reserved mineral interests, had not acquired, by deed, limitations, laches, or otherwise, the mineral interests thus segregated.

Each of appellees answered, denying plaintiffs' claims and asserting his or her full ownership[1] of tracts Nos. 1, 2, 3, 4, 5, 7, 8, 9, and 10, claimed by each.

In addition, each defendant filed a claim for affirmative relief as to the tract or tracts he claimed, and prayed judgment quieting title thereto.

The case was tried to the court without a jury on a record consisting of: (1) a stipulation[2] as to the title of appellees; (2) testimony as to heirship by one Nettie Egan, a granddaughter of F. E. Taylor, received over the objection of the defendants that it was hearsay; (3) the judgment in the Parsons case, note 1, supra; (4) the instruments, relied on by plaintiffs as vesting in them the mineral interests sued for, including the three, the disputed construction and effect of which present some of the crucial questions for determination on this appeal; and (5) testimony of the appellees and their witnesses as to long non claim and non use by the plaintiffs, and use, occupancy, and payment of taxes by appellees on the several tracts of land. This testimony was sufficient to support a finding of title by limitation and presumption of a grant, unless, as claimed by plaintiffs, there had been a severance and segregation of the minerals which rendered appellees' possession and use of the lands and plaintiffs'

1. Among other defenses to the claims against them were:
    (1) good and sufficient record title;
    (2) bona fide purchase for value without notice or knowledge of the adverse claims of plaintiffs to the mineral interests claimed;
    (3) that the instruments under which plaintiffs and their associates claimed were executory in nature and did not have the effect of creating a severance of the mineral estates and that if any rights had at any time been acquired thereby they had long since been lost and abandoned;
    (4) that some of the lands in which the interests were claimed were at the time it is claimed the interests arose unappropriated and unpatented, and the contracts dealing with them would be, and were, void;
    (5) the four year statute of limitations [Vernon's Ann.Civ.St. art. 5527];
    (6) the three, five, ten, and twenty-five year statutes of limitation, Arts. 5507, 5509, 5510, 5519 and 5519a [Vernon's Ann.Civ.St.] ;
    (7) as to the Southern Pacific Railroad 320 Acre Survey, the defendants

pleaded res judicata and estoppel by judgment in the case of W. A. Parsons v. H. Parsons, et al., No. 5356 in the District Court of Montague County, Texas, dated March 24, 1918, and recorded in Vol. "K" p. 334 of the Judgment Records of Montague County, Texas.

2. "Except as may be shown to the contrary by either party, it is agreed that the title to the respective lands herein involved were regularly vested by regular chain of title in one of the following:
    "F. E. Taylor, William Fanning, Vienna Grigsby, and/or J. M. Grigsby, husband of Vienna Grigsby, and/or the Grantors of such parties.
    "And except as to the respective agreements, deeds and/or reservations, if any, which will be offered in evidence, those lands were regularly conveyed by regular chain of title through one or the other of the above named parties to the respective defendants who hold title to same, subject to such rights as were retained, reserved or conveyed, if any, to the said F. E. Taylor, William Fanning, and Vienna Grigsby, or either of them."

non claim and non use of the minerals ineffective to divest plaintiffs of, and vest defendants with, full title to the mineral interests sued for.

As to the three contested instruments: appellant contended below that they were valid, present, conveyances vesting in each Fanning, Taylor, and Grigsby an undivided interest in the mineral estate in, on, and under the different tracts of land involved in this suit; while appellees contended that they were invalid, or, if valid, were mere contracts, not executed but executory instruments, to convey, and they were, therefore, ineffective to vest or sever the mineral interests.

The first of these instruments executed by L. L. Mobley to William Fanning, F. E. Taylor, and James M. Grigsby, and dated October 6, 1875, affected only the first of the described tracts, the L. L. Mobley 160 Acre Survey. Of the same general purport and effect of the instrument executed by Hughes and construed in Davis v. Field, Tex.Civ.App., 222 S.W.2d 697, 698, it is described in *haec verba* below.[3]

The second, which it was claimed affected the second tract, 160 acres of the Gibbs 640 Acre Survey, dated Oct. 3, 1876, was executed by Abner Riddle to and with the same parties and was of the same general purport. Only the description of the premises purported to be dealt with will be set out here.

"* * * and consideration of the mineral having been discovered on a certain tract or parcel of land to-wit: one hundred and sixty acres situated on the waters of Clear Creek about 14 miles southeast of the town of Montague *to be taken out of the South East corner of a survey in the name of L. C. Gibbs* the place where Abner Riddles now lives, * * *." (Emphasis supplied.)

The third, under which the interests in all the other tracts, except tract five, the Southern Pacific Survey, are claimed, is an instrument dated March 16, 1881, by and between Taylor, Fanning and Grigsby, his wife, Vienna Grigsby and one J. E. Stinson. It reads as follows:

"That William Fanning, Vienna Grigsby and F. E. Taylor all of the County and State aforesaid, do by these presents mutually agree one with the other *for and in consideration of the supposed interest in mineral that may be on lands owned or secured by them or any of them in, on, or under said lands owned or secured by them in anywise whatsoever; to shear and shear*

**3.** "for and in consideration of one dollar to me paid by Wm. Fanning, F. E. Taylor, James M. Grigsby & Company all of the County and State aforesaid, the receipt thereof is hereby acknowledged *and for and in consideration of the discovery of mineral on a certain described tract or parcel of land*, situated in Montague County, to-wit: A Presumption survey of 160 acres of land made for L. L. Mobley situated on the waters of Denton Creek, about 9½ miles Southeast from the town of Montague, the land on which he is now living and which is more fully described by the records of the Surveyors Office in Montague County to which this has reference hereby binding myself, my heirs, executors and administrators *to release and convey unto the aforesaid Wm. Fanning, F. E. Taylor & Company one-half of the mineral that has or may be discovered on said described land with all and singular the rights and privileges of erecting any and all buildings*

*and machinery necessary on said land for working said mineral* and I further bind myself to secure a patent on said land according to the preemption laws of the State of Texas. *And I further bind myself if I should sell and transfer my right and title to said land to reserve unto the said Fanning, Taylor, Grigsby & Company and their heirs or assigns one half of the mineral on said land with all the privileges* herein specified, hereby granting unto the aforesaid Fanning, Taylor, Grigsby & Company and their heirs and legal representatives all and singular the right to sell, convey and dispose of one-half of the mineral by shares or otherwise on said land, hereby granting to the aforesaid Fanning, Taylor & Grigsby & Company, their heirs and assigns all and singular the rights and privileges herein mentioned making their contract binding by law as herein specified. Given under my hand this the 6th day of Oct., A. D., 1875." (Emphasis supplied.)

*alike said mineral to enter said lands and take from said land there interest in all minerals* that may be in on or under said lands with all the rights and privileges as either or any one of them has in their own right and further more, that F. E. Taylor has conveyed by deed now on record in said County one-half of the mineral that may be on, in or under a 320 acre tract of land which he bought of B. F. Hodge lying on Petermans Creek in said County and adjoining the lands upon which William Fanning now resides *each of the contracting parties within named is to share said mineral as above specified share and share* alike under said deed recorded this article is binding upon our heirs, executors, Ads., or assigns, this .... day of ............, 1881. (Emphasis supplied.)

"(S.) William Fanning
(S.) Vienna Grigsby
(S.) F. E. Taylor

"We, William Fanning, James M. Grigsby and F. E. Taylor agree with J. E. Stinson for and in consideration of said Stinson digging or sinking what is known as a shaft on Block Ninety-two of Panola School, and upon which William Fanning resides fifty feet deep for which he is to have one-fourth interest that may be on in or under said Block of land of all the mineral in, on or under said land this is binding on our heirs, Ex. and Ads. and Assigns.

"(S.) William Fanning
(S.) Vienna Grigsby
(S.) F. E. Taylor
(S.) J. E. Stinson
(S.) Jas. M. Grigsby."

There was an opinion[4] in favor of the defendants, McNatt, Hester, et al., and against the plaintiffs and their affiliated defendants and a judgment that the plaintiffs and these defendants take nothing against the defendants C. R. Hester et al.

The judgment further ordered that these defendants, naming them, be forever quieted in their title to the respective lands and minerals claimed by them as against the plaintiffs, appearing by George Hopkins,

4. "The Court: This suit was filed, and, styled as a trespass to try title, for damages, and, for a Receiver, and, was filed on June 27, 1951.

"There are 49 plaintiffs, and 71 defendants.

"The plaintiffs are all residents of states other than Texas, and, the defendants are all residents of Texas, so that there is the necessary diversity, and, the Court finds that there is jurisdiction.

"The plaintiffs, though not appearing in person or, by deposition, at the trial, reside in the States of California, Kansas, Washington, Montana, Minnesota, Florida, Missouri, and Illinois.

"They sought to prove heirship by an employee of their attorneys who resides at Denton, Texas. Her testimony was made up largely of hearsay, secured by talking with others, and from letters which she received in answer to letters which she had written. The testimony was permitted under the claimed reputation rule, though it was practically all hearsay, and, therefore, somewhat flimsy.

"I find as facts, gentlemen, that the instrument claimed under by the plaintiffs, and, known first as an instrument dated 1881, is not such an instrument as would support a recovery in the manner, and, form, as here attempted, and, as late as the attempt is made.

"The properties involved, and, the other conveyances which are relied upon by the plaintiffs are not such conveyances as the law recognizes as a conveyance, but, are largely contracts between the parties themselves, who were making that particular instrument. That any rights they had against the properties sued for here have been lost by an unreasonable time which has elapsed since they might have matured some rights thereto. Laches are usually based upon statutes of limitation, but the Chancellor looks at the reasonableness of the effort to take under. I don't think that was done here in time.

All of these lands, and, all of these tracts, whether under that, or, any other instrument, and, particularly the one involved in the suit in the District Court of Montague County, are not such claims as appeal to a Chancellor, who must protect the innocent holder, and, user, and the taxpayer, against attempts made so late to unsettle such ownership.

I find, gentlemen, as a conclusion of law, that decree must go for the defendants.

812

Jr., and the associated defendants, appearing by George Hopkins.

Feeling themselves aggrieved by the judgment, appellants are here putting forward four main grounds for reversal.

The first is that as to the mineral interests claimed in and under the fifth tract, the Southern Pacific Railroad Company 320 acre survey, it was not even contended below that they were not properly reserved or granted, or that the minerals were not severed and segregated so as, under the settled law of Texas,[5] to prevent their being lost by laches or abandonment or adverse possession of the surface.

Further, as to said survey, they insist that the judgment in the Parsons case, for the reasons set out in their brief, was not effective to bar their claim, and that, as to the Belcher 94 acre tract, out of said survey, nothing is put forward except adverse possession of the surface to divest them of it.

As to the mineral interests claimed under the three disputed instruments referred to above, they urge upon us: that the instruments they rely on were not, as contended by defendants, mere contracts for the future acquisition of interests or equitable rights in the minerals, but present legal conveyances having the effect of then severing the mineral estate from the land. So urging, they insist that their execution prevented the loss of the mineral interests by abandonment and laches or by adverse possession and limitation, and that the judgment must be reversed and here rendered for the plaintiffs for all the interests they claim.

The appellees on their part insist: that the purported proof of heirship was inadmissible hearsay; that the witness was not competent to give family history; and that the plaintiffs must fail for want of proof of their heirship. Further, they urge upon us that, except as to the mineral interests in the Southern Pacific Survey which defendants concede were effectively reserved by,

or conveyed to, Taylor, the instruments appellants rely on, if valid and sufficient when made, were not present legal conveyances but were mere contracts or agreements to convey in future and that laches, abandonment, and limitations have long since divested plaintiffs of any right to sue upon them.

As to the Southern Pacific Survey, they insist that the judgment in the suits of Parsons v. Parsons, is *res judicata* as to the title of all of that tract except the 94 acres owned and held by the defendant Belcher, and that, as to that tract, the twenty-five year statutes of limitations, Secs. 5519 and 5519a have long since barred appellants as to the interests claimed.

▮▮▮ We do not agree with defendants that the proof of heirship was so defective as to defeat plaintiffs' suit. We think that the proof was admissible, if not as to all the plaintiffs at least as to enough of them to permit a recovery if ownership of a mineral interest has been established in any of the tracts.

We come then to the crux of this case, a consideration on their merits of the claims appellants make, that the various instruments they rely on, conveyed to, or reserved in Taylor, Fanning, and Grigsby the mineral interests dealt with therein, severing and segregating them from the lands described in their petition, thus preventing their after acquisition or loss by limitation, laches and abandonment. (Note 5 supra.)

We turn our attention first to the instrument which forms the basis of their claim to the greater part of the land sued for, the 1881 agreement between Taylor, Fanning and Vienna Grigsby to "*shear* and *shear* alike in consideration of the supposed interest in mineral that may be on lands owned or secured by them or any of them".

▮▮▮ So turning, we find ourselves in complete agreement with the appellees that if the description of the property dealt

5. West v. Hapgood, 141 Tex. 576, 174 S.W.2d 963; Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599; Grissom v. Anderson, 125 Tex. 26, 79 S.W.2d 619; Pagel v. Pumphrey, Tex.Civ.App., 204 S.W.2d 58; Collier v. Caraway, Tex.Civ.App., 140 S.W.2d 910.

with in it is adequate to convey and to put upon notice, and we do not think it is, the instrument does not constitute an executed conveyance of a present interest in, it did not sever the minerals under, any of the lands claimed by appellees in this suit. Under the stipulation in this case, note 2, supra, and the settled law of this state, that only an effective deed will operate to sever the two estates, Thomas v. Southwestern Settlement etc., Co., 132 Tex. 413, 123 S.W. 2d 290, all the minerals passed with the surface title into appellees. Rio Bravo v. Staley Oil Co., 138 Tex. 198, 158 S.W.2d 293.

■■■ Executory and contractual in its nature, or at its best a bond for title which could ripen into an equitable title only upon payment of the consideration, in this case the working of the minerals, it was subject to being lost by abandonment, laches, and limitation,[6] and the appellees by stipulation and by evidence showed acquisition and undisturbed possession of their lands for a longer period of time than is required under the Texas law of limitation.

■■■ The instrument contained none of the elements of a conveyance. It was merely an informal memorandum wherein the parties mutually agreed "one with the other for and in consideration of the supposed interest in mineral as may be on lands owned or secured by them, or any one of them, in, on or under said lands owned or secured by them in any wise whatsoever, to shear and shear alike said mineral to enter said lands and take from said land there interest * * * etc." It has some aspects of a mining partnership, but it was never carried out, and any rights to the minerals have long since been lost by abandonment.

It is quite clear, we think, that nothing having been done by any of the parties to the agreement during the nearly seventy years since its execution, to take any action to execute or otherwise assert an interest or right under it, any rights that may ever have existed under it have long since been lost.

■■■ We are further of the opinion, as indicated above, that if otherwise it would have been effective as a conveyance, the description of "minerals that may be on lands owned or secured by them, or any of them, in, on, or under any of the said lands owned or secured by them in anywise whatsoever" is too indefinite to convey and too indefinite to put upon notice appellees or their predecessors in title.

Because these are our views as to this instrument, we pass without comment the other objections urged to it by the appellees separately and as a group.

Coming next to the instrument executed by Mobley, offered as purporting to convey a mineral interest in and under the *first* described tract of land, we are of the opinion that, for the three reasons hereafter stated, it is ineffective to do so.

■■■ The first of these reasons is the reason given in the Davis case, supra, with respect to the substantial counterpart of this instrument that the land being still a part of the public domain, when an attempt was made to sever mineral interests from it, the grantor was without power to effect this severance and, the doctrine of after acquired title not applying, the instrument, if it had the effect of a present severance of the minerals as claimed by plaintiffs, was void.

■■■ A second reason is that, in our considered judgment, under the settled law of Texas, the instrument did not convey a present and indefeasible legal title, but was a mere contract to convey in future, or at best the conveyance of an equitable interest or title. Mobley having later transferred all his right and title to the land without, as he had agreed to do, having reserved "unto the said Taylor, Fanning

---

6. Collier v. Caraway, Tex.Civ.App., 140 S.W.2d 910; Faddell v. Taylor, Tex.Com. App., 239 S.W. 931; Olive-Sternenberg v. Gordon, 138 Tex. 459, 159 S.W. 2d 845; Dull v. Blum, 68 Tex. 299, 4 S.W. 489; Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066; Montgomery v. Noyes, 73 Tex. 203, 11 S.W. 138; Dikes v. Miller, 24 Tex. 417; Miller v. Yates, 122 Tex. 435, 61 S.W.2d 767.

and Grigsby", the one-third of the minerals dealt with in the contract, and none of them or their heirs throughout the seventy years since having taken action to assert their claim, all rights they ever had under it have long since been lost. Note 6, supra.

In saying this, we are not unmindful of the fact that the majority opinion in the Davis case [222 S.W.2d 699], not however as a ground for the decision of the case, stated that the instrument "should be treated as an attempted present conveyance of the minerals". It did not, however, deal with the question presented here, whether the rights it conferred, whatever they were, had, under the settled law of Texas, been lost.

█ Our third reason for believing the instrument ineffective is that, if it was a conveyance and if, as appellants urge, the fact that, though patent had not issued, the required three years' occupancy was completed before it was made, differentiates this case from Davis's, so that the minerals here were subject to transfer before patent, the whole structure of the instrument and the actions of the parties under it leave us in no doubt that the consideration for its giving was the working of the land for the minerals. If, therefore, the instrument passed a fee, it was similar to that conveyed by an oil lease, a defeasible one, subject to be lost upon the failure of the prime consideration for its transfer, the discovery of minerals and the working of the land to obtain them.[7]

█ The third instrument, executed by Riddle, was not an attempt to sever a mineral interest from public lands before title had passed to the grantor, and, therefore, it is not subject to the first reason given above for holding the Mobley instrument invalid. It is none the less invalid for the second and third reasons given above for finding that instrument invalid. In addition to the reasons already given, we think the description insufficient, under the rule laid down in

Turner v. Hunt, 131 Tex., at 496, 116 S.W. 2d 688, 117 A.L.R. 1066, to constitute it a present conveyance.

█ Here, as in the Turner case, the contract did not convey a specific tract or an undivided interest in a larger tract. If it conveyed anything, it was only an equitable right to select and take the land out of the southeast corner of a survey, in the name of L. C. Gibbs and, as held in the Turner case, upon full citation of authority, the assertion of this right was subject to be lost by abandonment or laches.

When it comes to the Southern Pacific tract, however, where the mineral interest was definitely and precisely conveyed and segregated, the appellees interested in that tract stand quite differently. The validity and effectiveness of the instruments to sever the mineral under that tract are not disputed, and, unless the defenses peculiar to that tract are good, the judgment was wrong as to it.

█ These defenses are: (1) the Parsons judgment as to all of the tracts except the Belcher 94 acres; and (2) as to the Belcher tract, the twenty-five year statutes of repose, Arts. 5519 and 5519a. Whatever of force there might be in plaintiffs' attacks upon that judgment, if they had been timely made in a direct suit, we think that against this collateral attack upon it, it furnishes a complete bar to plaintiffs' recovery. It was rendered more than thirty years ago. It imports verity on its face. It does not, as appellants claim that it does, show on its face that it was a suit to remove cloud. On the contrary, the judgment shows that the suit was to recover title and that after full findings as to the right of plaintiff to recover, the judgment ordered that the plaintiffs do have and recover from all of the defendants herein the fee simple title in and to the lands.

█ As to the defenses of the statutes of limitation of twenty-five years, Arts. 5519 and 5519a, Revised Civil Statutes of

---

7. W. T. Waggoner v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Grubb v. McAfee, 109 Tex. 527, 531, 212 S.W. 464; Munsey v. Marnet Oil & Gas Co., 113 Tex. 212, 254 S.W. 311; Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601, and cases cited in note 6, supra.

Texas, it is quite plain that they are not made out. The mineral interest having been severed, under the settled law of Texas neither the grantor of the severed mineral nor his successors in title can prescribe against the mineral interest by merely possessing the surface. Therefore, Art. 5519, which requires twenty-five years' peaceable adverse possession, cannot apply.

■ Whether, under Art. 5519a, which does not require adverse possession, but only the exercise of dominion, with payment of taxes, for twenty-five years and non assertion of claim and non payment of taxes by the opposing claimants, the defendant Belcher's dominion over the surface could satisfy the statute, we do not find it necessary to decide.[8] As the Supreme Court, in West v. Hapgood, did, "We do not express an opinion as to this contention", since there is no proof of twenty-five years' payment of taxes which the statute makes essential. Cf. Pagel v. Pumphrey, Tex.Civ.App., 204 S.W.2d at 65.

The judgment is affirmed as to all the tracts and interests for which the appellees had judgment quieting their title, except as to the Belcher tract. As to the mineral interest reserved under that tract, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings, the costs of appeal to be assessed three-fourths against appellants and one-fourth against appellee, C. L. Belcher.

While no point was made below of the fact that the take nothing judgment[9] was not limited to the tracts claimed by the appellees, and appellants made no effort below to correct the judgment, the appellees have agreed in open court that they have no objection to the "take nothing" judgment being limited to the tracts claimed by appellees and for which they had judgment quieting their title, and to its affirmance being without prejudice to the right, if any, of plaintiffs in tracts other than those.

**8.** Wiggins v. Houston Oil Co. of Texas, Tex.Civ.App., 203 S.W.2d 252; West v. Hapgood, Tex.Civ.App., 169 S.W.2d 204, McDonald, C. J., dissenting; Cf. West v. Hapgood, 141 Tex. 576, 581, 174 S.W. 2d 963, 966.

**9.** Permian Oil Co. v. Smith, 129 Tex. 413, 107 S.W.2d 564, 111 A.L.R. 1152; Poth v. Roosth, 146 Tex. 7, 202 S.W.2d 442, 443.