The **TEXAS PACIFIC COAL AND OIL COMPANY**, Appellant,

v.

**HONOLULU OIL CORPORATION**, Appellee.

No. 16217.

United States Court of Appeals Fifth Circuit.

March 1, 1957.

Luther Hudson, Fort Worth, Tex., Jas. H. Milam, Lubbock, Tex., Crenshaw, Dupree & Milam, Lubbock, Tex., Hudson, Keltner & Sarsgard, Fort Worth, Tex., for appellant, Texas-Pacific Coal and Oil Co.

Thos. M. Phillips, Houston, Tex., W. B. Browder, Jr., Midland, Tex., F. G. Coates, Ewell E. Murphy, Jr., Houston, Tex., Stubbeman, McRae & Sealy Midland, Tex., Baker Botts, Andrews & Shepherd, Houston, Tex., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and WARREN L. JONES, Circuit Judges.

HUTCHESON, Chief Judge.

 Filed by the appellee, the suit was for a judgment, removing as a cloud, upon plaintiff's title to a mineral leasehold estate held by it, the assertion of and claims of defendant to an overriding royalties in production from said estate, estopping defendant from making such

assertions and claims, and establishing and confirming plaintiff's mineral leasehold estate as against the defendant.

Tried to the court without a jury, there were findings and conclusions, contained in a written opinion,[1] and a judgment in favor of plaintiff, and defendant has appealed.

Here, in a thorough going and well presented brief and argument, the appellant confidently urges upon us that the judgment was wrong and must be reversed, while appellee, with an equal show of confidence and in a brief and argument fully canvassing the points made for and against the judgment, insists that the judgment was right and should be affirmed on the grounds and for the reasons given by the district judge.

We agree that this is so. While there is a great deal of contention and discussion about the matter, the case is quite simple in its facts, and we think equally simple in the law controlling it. Since the district judge has carefully and fully stated the material facts[2] and as carefully stated and declared the law, this opinion, in addition to declaring our approval of his decision, will be confined to stating briefly the essential facts and the basic legal principles which control the decision.

The defendant, lessee in an oil and gas lease, shortly before the lease expired executed with one W. R. Bowden a farm-out letter agreement which stated, "It is understood that this letter covers our entire agreement", and provided in paragraph (7):

"When you have fully complied with all of the provisions herein contained and aforesaid well has been completed as a dry hole or a producing well, we will deliver to you valid recordable assignments of the leases, but it is understood and agreed that Texas Pacific Coal and Oil Company will except from said assignment and reserve unto itself and its assigns as a free overriding royalty ⅟₁₆ of ⅝ of all of the oil, gas and other minerals produced and saved from the land covered by such assignment, * * *"

Bowden assigned his rights under the farm-out letter to plaintiff, and, with only eight days remaining before the lease had expired, plaintiff entered upon the lease and, in full compliance with its contract, drilled a test well which was plugged and abandoned on November 20, 1946, and the lease, having expired by its terms, was later released by plaintiff to the original owners. Cf. Keese v. Continental Pipe Line Co., 5 Cir., 235 F.2d 386.

On November 20, however, plaintiff, desiring, for the purpose of establishing a record to support income tax deductions, to obtain the formal assignment, the execution of which had been provided for in the farm-out letter agreement, by letter requested such assignment, and the assignment was prepared and executed by defendant. Instead, however, and this is the origin and the meat of this controversy, of precisely following the farm-out agreement, the assignment, after providing:

"Nevertheless, there is not conveyed hereby but there is expressly excepted herefrom and reserved to said Texas Pacific Coal and Oil Company, its successors and assigns, as a free overriding royalty, [one-sixteenth of eight-eights (⅟₁₆ of ⅝ of all oil, gas and other minerals produced and saved from the premises herein assigned; * *] * * *"

further provided:

"It is further stipulated and agreed that the overriding royalties herein reserved shall be delivered to said Texas Pacific Coal and Oil

1. Honolulu Oil Corp. v. Texas Pac. Coal & Oil Co., D.C., 141 F.Supp. 322.
2. Appellant states in its brief, "While appellant does not concede detailed accuracy of the trial court's recitation of the facts, the trial court's memorandum is substantially correct as to facts except in a few instances. It ignores certain undisputed facts which we think must be shown in the interest of accuracy."

Company, its successors or assigns, or paid for as above provided upon all oil, gas and other minerals produced and saved from the premises herein assigned, in the manner and amounts above set out, whether same is produced under and by virtue of the above described lease or under and by virtue of any extension or renewal thereof *or under and by virtue of any other lease or contract whatsoever whether heretofore or hereafter made by and between the assignee herein, his heirs or assigns, and the true owners of said lands.* (Emphasis supplied.)

The meaning and effect to be given to the emphasized words forms the basis of this lawsuit. For, some three years later, plaintiff, having in drilling on property near this property discovered oil, went to the Ellingtons, the lessors in the original lease to defendant, and obtained a new lease, and, after plaintiff had discovered oil thereunder, the defendant made the claim to an interest in the new lease, which gave this suit rise.

The district judge rejected appellee's position "that the farm-out letter and the defendant's assignment, when properly construed in the light of all the attending circumstances, do not reflect any outright conflict in respect to the defendant's reservation of an overriding royalty", and held that there was a conflict and that the conflict must be resolved by giving effect to the farm-out agreement. In support, he declared [141 F.Supp. 327]:

> "The courts have generally held that a party, upon full performance of his obligations under an initial contract, then has a vested right to return performance by the other party under the same contract, and his right to such mutual performance cannot be qualified or burdened by additional requirements, in the name of merger, under some later gratuitous promise or assent in the guise of a contract.

> "* * * The cases hold that, where one contracting party, by performance, has matured his right to demand performance from the other party, any other onerous promise or assent made by the first party, with no inducement except that the other party perform what he is already bound to do, is without consideration and not binding in law. Some of the many cases and texts in point are * * * Jones v. Risley, 91 Tex. 1, 32 S.W. 1027; Carrothers v. Stanolind O. & G. Co., D. C., 134 F.Supp. 191; Wiedeman v. Howell [Tex.Civ.App., 276 S.W. 2d 380]; Witherspoon v. Green, Tex.Civ.App., 274 S.W. 170; Kahn v. Ilitzky, Tex.Civ.App., 107 S.W.2d 1015; Barreda v. Craig, Tex.Com. App., 222 S.W. 177; Panhandle Refining Co. v. Bennett, Tex.Civ. App., 13 S.W.2d 923; Bonzer v. Garrett, Tex.Civ.App., 162 S.W. 934; Szanto v. Pagel, Tex.Civ.App., 47 S.W.2d 632; Corbin on Contracts, Section 175, page 568; and Williston on Contracts, Section 130, page 443."

Opposing to these views the principle stated in Greene v. White, 137 Tex. 361, at page 375, 153 S.W.2d 575, at page 583, 136 A.L.R. 626 and applied in Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599, and Klein v. First National Bank, Tex.Civ.App., 266 S.W.2d 448;

> "The general rule is that the grantee in a deed accepted by him is a party to the deed, even though he does not sign it, and that he is concluded by recitals in the deed and by reservations contained therein in favor of the grantor."

appellant insists that they are unsound and may not stand.

We cannot at all agree. In the first place, as pointed out in the Adams and Klein[3] cases, in order for the principle to apply it must appear that the parties claimed title to their present lease under,

3. *"Appellee claims title to the mineral rights here involved by virtue of the*

*provisions in the deed* dated April 26, 1922, where the land was deeded to Henry

and so claiming used, the assignment to their advantage.

In the second place, and of perhaps even greater importance, the instruments in question in those cases contained the original contract, they were not executed, as the one in question here was, merely to comply with and carry out an antecedent contract, the terms of which had already, upon adequate consideration, been determined upon and fixed.

In addition, the district judge found "that when the defendant wrote the provision, which has provoked this litigation, in the assignment it knew that the lease had expired and also that the plaintiff had dealt fairly with it in the dry hole test on the land, and, against that background, it is far-fetched to think that the defendant was taking precaution against a fanciful washout attempt. Instead, the defendant, taking all the pains to write this provision in the assignment, evidently meant the language in its literal sense and presumably was trying to secure just such a hold as it claims in this lawsuit. The state of things right then was favorable for the chance that such provision would go by unchallenged. The dry hole could have predisposed the plaintiff to write the whole venture off without much attention and no anticipation that it would ever want a lease on the land again in later years. The plaintiff's lawyer did not overlook this provision, but explained that he thought it was only directed as further precaution against any washout development. In that respect, the meaning of the provision was misjudged."

■ Executed and delivered under such circumstances, the instrument cannot properly be brought within the compass or principle of the Greene, Adams, and Klein cases. Indeed, to construe those cases to permit an instrument confected by the defendant with an intent to enlarge its interests under its contract without any consideration being given therefor—an intent not communicated to, or suspected by, plaintiff,—to completely change the rights of the parties as already fixed by their contract, would, we think be running a good principle into the ground. Moreover, we think that the result would be to unjustly enrich the defendant at the expense of the plaintiff in violation of well understood equitable principles. Cf. Providence Washington Ins. Co. v. Rabinowitz, 5 Cir., 227 F.2d 300, 301.

The judgment was right. It is affirmed.

Klein subject to the reservation of all minerals on the property in question with the right to mine the same. * * *

"*The instrument dated April 26, 1922, was a contractual obligation and used by the parties herein to prove their record title. They cannot be heard to say* they are not bound by its terms. Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599, 603, stated:

" 'Since the Ford deed was not void, we think its effect is settled by Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626. Although they did not sign the deed, *grantees Adams accepted it and subsequently used it to their advantage;* so they and petitioners, their privies, were concluded by its recitals and by the reservations therein in favor of the Duncan estate and its heirs, the respondents. * * *

* * * * *

" 'The grantees not only accepted the deed but they recorded it; *they used it in subsequent litigation to prove record title in themselves, and one of them testified that they bought the land by that deed in 1906 and never owned it before; and they referred to it thereafter in conveyances affecting the land. Therefore, neither they nor petitioners as their heirs and successors in title can now be heard to say that they are not bound by its contractual obligations.' "* (all emphasis supplied) Klein v. First Nat. Bank, supra, 266 S.W.2d at pages 448, 450 and 451.