[Civ. No. 3400.   Third Appellate District.—December 23, 1927.]

MILTON REALTY COMPANY (a Corporation), Appellant,
v. JAMES I. BUTTERFIELD, Respondent.

Lorrin Andrews for Appellant.

Spicer, Meacham & Mason for Respondent.

PLUMMER, J.—Action by plaintiff to rescind a contract for the purchase of four lots situate in the city of Long Beach, on the grounds of fraud, and a second cause of action, with common counts, for the recovery of $15,000 paid as first installment on the purchase price thereof. The defendant had judgment for costs, and the plaintiff appeals.

The record shows that prior to the first day of April, 1923, the plaintiff and the defendant had some negotiations relative to the purchase by the plaintiff from the defendant of lots 14 and 16, in block 93, situate in Long Beach town site, in the city of Long Beach. That during such negotiations the plaintiff informed the defendant that lots 14 and 16 were not of sufficient size to meet the purposes for which the plaintiff desired to purchase said lots, and that the plaintiff would desire lots 10 and 12 in said block. The record shows that at that time lots 10 and 12 belonged to one Alexander. That thereafter, on or about the first day of April, 1923, the defendant entered into a contract with said Alexander for the purchase of lots 10 and 12, upon the following terms, to wit: $5,000 cash; $11,750 on or before 90 days from the sixth day of April, 1923; and further, the assumption of a mortgage on said premises in the sum of $8,250, making the purchase price of said lots 10 and 12 in the aggregate sum of $25,000. After the securing of this contract the plaintiff and the defendant entered into a written contract for the purchase of said lots in the words and figures following, to wit:

"Long Beach, California, April 14, 1923.
"Milton Realty Company, Incorporated,
    "114 Locust Avenue,
        "Long Beach, California.
    "Gentlemen, I, the undersigned, owner of Lots 10, 12, 14, and 16, Block 93, Long Beach Townsite, Long Beach,

California, offer for sale to your Company, and will deliver to your Company Fee Title to the above mentioned property upon the following terms, namely: First. I am to receive from your Company the sum of Seventy Five Thousand ($75,000.00) Dollars, in cash, on the following terms: On July 1, 1923, $15,000.00 On September 1, 1923, 60,000.00. Second. I am to receive from the Holding Company, which you will organize to handle the project of building upon the above Lots, 750 shares of the Capital Stock of said Holding Company at One Hundred Dollars par value, to be placed in escrow and to remain intact, until all apartments in the Apartment Building to be erected upon the above described property have been sold. Third. That the above mentioned 750 shares of the Capital Stock are to represent the value of Apartments in the Building to be erected upon said property, which said Apartments are to be selected at random by the undersigned. Fourth. That for and in consideration of services rendered by [(M. R. Co. Inc. (2)] me by architects, Messrs. Davies and Baume, of Long Beach, California, I will retain their services as architects in the construction of the building to be erected upon the foregoing described property. I have, furthermore, agreed to pay said architects Five (5) per cent of the gross cost of the construction of said building for their services. If the foregoing terms are agreeable to your Company, I shall appreciate an acknowledgment of this communication.

"Respectfully yours,

"JAMES I. BUTTERFIELD,

"114 Locust Avenue, Long Beach, California.

"April 14, 1923.

"Mr. James I. Butterfield,

"Long Beach, California.

"Dear Sir. We, the undersigned, President and Secretary respectively, of the Milton Realty Company, Incorporated, on behalf of said Company agree to the terms herein enumerated, and the Company also agrees to assume all indebtedness now outstanding on the property in question.

"Respectfully yours,

"MILTON REALTY COMPANY, INCORPORATED.

"By JACK MILTON, President.

"By H. GOODING FIELD, Secretary. (Seal) "

The $15,000 specified in said contract to be paid on July 1, 1923, was paid by the plaintiff to the defendant in installments. The last installment, making the full payment of $15,000, was paid by the plaintiff to the defendant on August 4, 1923.

The period mentioned in the option or contract given by Alexander to the defendant to purchase lots 10 and 12 in block 93 was, by said Alexander, extended to August 27, 1923. On August 27, 1923, the defendant, not having paid to Alexander the $11,750 provided to be paid on account of the purchase price of said lots, Alexander canceled the optional contract theretofore given to the said defendant to purchase said lots, and drew down the forfeit money deposited by the defendant at the time of the execution of such contract, and no contract was thereafter given by Alexander to the defendant to purchase said lots 10 and 12. On the seventh day of September, 1923, the plaintiff gave notice to the defendant of rescission of the contract hereinbefore set forth, entered into between the plaintiff and the defendant for the purchase of said four lots, and demanded return of the $15,000 paid as aforesaid as the first installment of the purchase price for said lots. The notice of rescission and demand for the return of said money was based upon the alleged ground that the defendant did not have any title to said property at the time of the execution of said contract, and was not, at the time thereof, nor at the time of the notice, able to convey any title thereto.

The trial court found that there was no fraud in the inception of the contract, and that the plaintiff was aware of the title to lots 10 and 12, in block 93, held by the defendant, and of the contract obtained by him for the purchase of said premises, the trial court also, by general language, finding that the allegations of the defendant's answer were true, found that the defendant was able to convey title to lots 10 and 12, in block 93, on the first day of September, 1923, and upon the date of the demand for the return of the $15,000, made by the plaintiff, and that defendant was, upon the said first day of September, 1923, and at all times thereafter up to the institution of suit, able to convey title to said premises. The finding of the

court in these particulars is not specific, but is in general language finding allegations of the answer to be true.

Upon this appeal the appellant assigns 80 specifications of error as to the findings of the trial court, and also sets forth four alleged errors of the trial court in relation to the conclusions of law drawn from the findings. ██ Only one error as to the findings and conclusions drawn therefrom needs to be considered, and that is the general finding in relation to the capacity of the defendant to convey title to lots 10 and 12. If that finding is unsupported by the evidence, the plaintiff is entitled to judgment for the return of the sum of $15,000, together with interest thereon at the rate of seven per cent per annum from the seventh day of September, 1923.

The contract entered into between the plaintiff and the defendant, dated April 4, 1923, does not make time the essence thereof. But if time were of the essence thereof, the acceptance by the defendant of the $15,000 paid in installments, as heretofore stated, between the first day of July, 1923, and August 4, 1923, would constitute a waiver thereof. So that, in any event, the contract was in full force and effect on the first day of September, 1923. However, time not being of the essence of the contract, the performance, within a reasonable time, would constitute compliance therewith. Was the defendant, on September 1, 1923, able to convey title to lots 10 and 12 in block 93? There is no controversy in the testimony that the contract between Alexander and the defendant expired on the twenty-seventh day of August, 1923, and that after that date the defendant had no written agreement enabling him to purchase said premises, or to compel a conveyance of title thereto from Alexander to himself. The testimony of the defendant himself shows that he had no such power. Before quoting the testimony of the defendant, however, we may state that the record shows that the plaintiff had paid to the defendant a sum of money greater in amount than would have been required to be paid by the defendant to Alexander to keep alive his agreement with Alexander for the purchase of said lots 10 and 12. We may also state that there is some testimony in the record to the effect that the defendant had agreed with the plaintiff to use the $15,000 paid by the plain-

tiff to the defendant, in making payment of the sum of money agreed to be paid by the defendant to Alexander. But this does not affect the legal status of the matter, but is only set forth in order to shed light upon the testimony of the defendant, which is as follows: "I never made any statement or promise to the Milton Realty Company as to what I would do with the whole or any portion of the $15,000.00. No representative of the Milton Realty Company ever questioned me as to what I should do or had done with the $15,000. It is true that the testimony of Mrs. Alexander shows that on or about the 27th day of August, 1923, she closed the escrow and I forfeited $5000. that I had in that escrow. I did have a conversation with Mrs. Alexander on or about that time in regards to closing this escrow. There was no representative of the plaintiff present when this conversation with Mrs. Alexander, relative to the closing of the escrow took place. On the 7th day of September, 1923, the day upon which I was served with the notice of rescission in this matter by the Milton Realty Company, I was ready, able and willing to deliver the titles to Lots 10, 12, 14 and 16 upon payment of the contract. I knew I could deliver the title to Lots 10 and 12 upon the statement of Mrs. Alexander." The testimony of Mrs. Alexander upon this question is as follows: "It is a fact that at all times we looked to Butterfield for the money, and no one else. In conversation with Butterfield there was another person with him whom I knew was an officer of the Milton Realty Company; he introduced himself and told us who he was, and he also had the plans of the proposed building with him, and went into detail, telling us what a fine building was going to go up on the property and that it was going to be erected by the Milton Realty Company. The person who was with Butterfield told us who he was; so that was how we knew he was an officer of the Milton Realty Company. It is a fact that some time after the forfeiture of the money by Butterfield and the cancelation of the escrow agreement, Butterfield came to me and asked me to sign certain papers, which I refused to do. I did not see any papers; he merely said he would like me to give him another extension; that was what he wanted us to sign after the forfeiture. I did

not see any papers. I stated that the matter was closed and that we had decided to hold the property.'' From this testimony it is evident that the statement of the defendant Butterfield that he could convey title to the premises was based simply upon his hope that he might be able to induce the Alexanders to give him an extension of time or another agreement for the purchase of the lots in question. The testimony of Mr. Alexander is of the same effect, that the agreement with Butterfield was canceled on the twenty-seventh day of August, 1923, and that he had no further conversations about the lot. From this recital it appears without controversy that the general finding that the defendant on the first day of September, 1923, or at any time after the twenty-seventh day of August, 1923, was able to convey title to lots 10 and 12, in block 93, is wholly unsupported.

The law appears to be well settled that where a vendor, whether with or without fault, is unable to convey title at the time the contract matures, the purchaser may rescind the contract and recover the purchase money paid by him as a part of the purchase price. In the case of *Burks* v. *Davies,* 85 Cal. 110 [20 Am. St. Rep. 213, 24 Pac. 613], the law in such cases is thus stated (we are quoting from the syllabus) : ''If the vendor, though not the absolute owner, has it in his power by the ordinary course of law or equity, to make himself such owner, he will be permitted, within a reasonable time, to do so; but if he has no contract for the title and makes no attempt to obtain it until after the contract has been rescinded and he could not have conveyed it during the time within which the contract was to be performed, it is immaterial that he thereafter receives an offer for it on condition that the purchaser is ready to take the property, and the court need not pass upon the question whether the purchaser was willing or anxious to take it.'' In support of its decision, the court cites *Sanders* v. *Lansing,* 70 Cal. 429 [11 Pac. 702], and *Marshall* v. *Caldwell,* 41 Cal. 614. In *Brimmer* v. *Salisbury,* 167 Cal. 523 [140 Pac. 30], the rule is thus stated: ''Where a vendee contracts with one having none, or an imperfect title, he contracts in the hope or expectation that the vendor may be able to perfect the title. Such is not the case where the

vendor has title and thereafter parts with it. Of the essence of the contract is the security to the vendee, in his payments, of the title which the vendor has, and if the vendor parts with that title, to the impairment or destruction of that security, the vendee may be heard justly to complain, and it is no answer to say that the vendor thereafter may be able to go into the open market and repurchase the property. . . . Common experience tells us that such an expectation is in its nature but a remote possibility, and that such a vendor has not the slightest intention of so doing.'' The rule is also stated that if a vendor having title conveys the property subject to any contracts into which he has entered, then and in that case, the vendee's rights having been protected, he is not entitled to rescind. Such, however, is not the case here. The record shows the title possessed by the defendant or the right which the defendant possessed to acquire title to lots 10 and 12, and that he allowed said right to lapse before he was entitled to the second payment under his contract with the plaintiff. Again, as stated in 25 Cal. Jur. 719, section 191: ''A purchaser may rescind, regardless of the motives which prompt such action, if the vendor is unable to furnish a marketable title when the time for performance arrives. But unless he was induced to make the purchase by reason of the representations as to the title, he may not do so merely because the vendor had no title when the contract was entered into or prior to the time of performance. One may contract to sell property which he does not then own, and his want of title is not ground for rescission unless he is unable to perform when performance is due or the defect is such that it cannot be cured by ordinary business negotiations.'' Again, under such circumstances, if the vendor is entitled to receive a conveyance, the fact that he did not receive the title until after the time allowed for completion of his purchase, the vendee is not entitled to rescind. ■ In other words, in any case where the vendor has not title to the property which he has contracted to convey, he must possess a legal right which by ordinary procedure may be caused to ripen into a good and sufficient title, and if such right does not exist at the time set for the completion of a contract with his vendee, the vendee may rescind. Or, as stated in the case

of *Brimmer* v. *Salisbury*, the vendee is not required to wait until his vendor may go into open market and possibly purchase the property or obtain another contract from the owner thereof. The same rule setting forth the right of the vendee to rescind, in the event that his vendor is not able to convey title at the time for performance fixed in the contract, is set forth in 27 R. C. L. 648, section 410. Again, where the vendor by his own act has rendered himself unable to convey title, tender of the remainder of the purchase money by the vendee is unnecessary, and he may maintain his action to recover the portion of the purchase money paid without tendering the balance and demanding conveyance. In the case of *Wilhelm* v. *Fimple*, 31 Iowa, 131 [7 Am. Rep. 117], the rule is thus stated: "Where a vendor of real estate has by his own act or by operation of law been rendered unable to perform his contract to convey such real estate to the vendee, the vendee may rescind the contract and recover the purchase money paid without first tendering to the vendor the purchase money due and demanding a deed; and the vendee may exercise this right where a vendor has permitted a mortgage executed by him and existing at the time of the purchase, to be foreclosed and the lands sold thereunder." Likewise, in the case of *Wright* v. *Dickinson*, 67 Mich. 580 [11 Am. St. Rep. 602, 35 N. W. 164], it is held "where the vendee has agreed to purchase, and the vendor to convey land in fee, and the latter cannot make title, the former may bring his action to recover the purchase money without first tendering a performance." (See, also, the cases cited in the note to *Wright* v. *Dickinson*, as reported in 11 Am. St. Rep. 611.) To the same effect is the more recent case of *Ihrke* v. *Continental Life Insurance & Investment Co.*, 91 Wash. 342 [L. R. A. 1916F, 430, 157 Pac. 866], where the same question was under consideration, and it was there held that one who has entered into an executory contract to purchase real estate may cease his payments and maintain an action to rescind where the vendor has placed himself in a position where he cannot perform on his part. See, also, 25 Cal. Jur. 716, section 188, where authorities are cited supporting this statement: "Failure or refusal of the vendor to perform the contract on his part, or the fact that he puts it out of

his power to perform, is ground for rescission by the purchaser. Accordingly, he may rescind and recover the purchase money paid, etc." In 27 R. C. L., page 653, section 413, we find the law thus stated: "If the vendor's want of title and consequent inability to convey are admitted, this will dispense with the necessity for an actual tender by the purchaser of the unpaid purchase money; and if the vendor has placed it out of his power to perform, when the time arrives the purchaser may cease performing on his part without affecting his right to rescind. This is true where the vendor, by his own act or omission to act, has placed it out of his power to convey, as where he has permitted the title to pass by him by the foreclosure of a mortgage executed by him and existing at the time of the sale." (Citing a number of authorities.) In the case at bar the vendor, by allowing his contract with the Alexanders to lapse, voluntarily placed himself in a position where he was unable, at any time after the twenty-seventh day of August, 1923, to convey title, and under the authorities cited, the vendee (the plaintiff in this action) had a right to rescind and demand the return of the $15,000 paid on account of the purchase price thereof. In view of the authorities which we have cited, and the facts which we have set forth herein, and also, in consideration that no change in those facts can be made, it necessarily follows that the finding of the trial court, numbered 19, which is to the effect that each and every allegation of the defendant's answer, except as otherwise found in the findings, is true, which finding is the only one which supports the allegation of the answer that the defendant was able to convey title, is contrary to the evidence and must be, and is hereby, set aside.

And in view of section 4¾ of article VI of the state constitution and section 956a of the Code of Civil Procedure, the following finding is substituted therefor, to wit: It is hereby found that on the twenty-seventh day of August, 1923, the defendant voluntarily permitted his contract for the purchase of lots 10 and 12 in block 93 of Long Beach town site, in the city of Long Beach, to lapse, and that since said date the defendant has had, neither in law nor in equity, any title to said lots or any contract or agreement for the purchase thereof. It is further ordered that

all portions of the findings of the trial court inconsistent herewith be stricken out. It is further ordered that the conclusions of law drawn by the trial court be stricken out, and the following substituted, to wit: As a conclusion of law from the substituted findings herein and the findings of the trial court as modified by the order above stated, it is concluded that the defendant J. I. Butterfield has not, at any time since the twenty-seventh day of August, 1923, been able to convey title to said lots 10 and 12 by reason of his voluntarily allowing his contract for the purchase thereof to lapse. Second: as a further conclusion of law from the substituted finding hereinabove set forth, and the order modifying or striking out inconsistent findings of the trial court, the conclusion is drawn that the plaintiff is entitled to judgment against the defendant for the sum of $15,000, the amount of the first installment of purchase price paid on account of his contract with the defendant, dated April 14, 1923, and also to interest thereon at the rate of seven per cent per annum from the seventh day of September, 1923.

It is further ordered that the judgment of the trial court be reversed, and the trial court directed to enter judgment for the plaintiff in the said sum of $15,000 and interest thereon at the rate of seven per cent per annum from the seventh day of September, 1923.

Hart, J., and Finch, P. J., concurred.