[Civ. No. 18913.   First Dist., Div. Two.   Sept. 19, 1960.]

MILES M. POST et al., Respondents, v. PALPAR, INC.
(a Corporation) et al., Appellants.

Alfred J. Harwood for Appellants.

Crist, Peters, Donegan & Brenner for Respondents.

KAUFMAN, P. J.—This is an appeal from a judgment of rescission in favor of Miles M. and Mary E. Post, the purchasers under a written contract for the sale of real property owned by the appellants. The appellants argue that the judgment must be reversed because of errors in the findings of fact and conclusions of law and in the admission of certain evidence. There is no merit in either of these arguments.

The facts are not in dispute. On May 7, 1956, respondents made a payment of $100 and signed a written deposit receipt agreement with the appellants for the purchase of an unimproved parcel of real property in Redwood City, California. The agreement was drawn by the appellant, A. J. Harwood, who is an attorney. It provided that the balance of the purchase price of $5,500 was to be paid as follows: $1,800 on May 17, 1956, and the remaining balance in monthly installments of $60 or more, beginning June 17, 1956, with interest at 5 per cent per year; and that if the seller could not perfect a marketable title within 90 days, the purchaser would have the option of demanding and receiving back his deposit and be released of all obligations. The agreement further stated that time was of the essence.

At the time the agreement was signed, the respondents informed the appellant, A. J. Harwood, that they were anxious to build. A. J. Harwood said: "I tell you what I will do. When you have paid $4,000.00 on the principle [sic], I will be willing to give you title to the property and take the balance out of the building loan."

The respondents paid $1,800 on May 17 and thereafter made regular payments of $75 a month through and including August, 1957. In July, 1957, when they had already paid $3,125 on the contract, they offered to pay up to the $4,000, and asked the appellants to supply a deed in the form provided in the contract. A. J. Harwood, however, informed

them that due to an error in the description of the adjoining lot, he could not supply a marketable title. Respondents again informed Harwood that they were anxious to build before the rainy season started and were assured that Harwood would get clear title to the property. Respondents contacted a builder and had a set of plans drawn. During the weekend of August 25, 1957, respondents took the plans to Harwood, who initialed the plans and requested that they be taken to his architect for approval. This was done. Thereafter, the parties had another discussion about when the construction could begin and Harwood again informed the respondents that they would be able to build before the rainy season of 1957.

In September, 1957, respondents received the following letter from Harwood:

"It may be quite a while before I settle the quiet title suit involving the property which I have agreed to sell to you, or until I obtain a final judgment in my favor. As you are now prepared to accept a deed conveying a clear title which I cannot give at this time, I would suggest the following agreement be made between us, viz:

"1. That no further payments be made by you on the contract until I am in a position to give you a clear deed.

"2. That you shall pay no further interest on the balance due.

"3. That if I do not obtain final judgment in my favor in the quiet title suit, that I repay to you all money heretofore paid by you on your contract.

"If the foregoing agreement is satisfactory to you, please sign and return to me the enclosed copy of this letter."

Before signing the letter, respondents called Harwood about the amount of time involved; Harwood stated he thought he would be able to clear it up in another 60 days. Thereafter, respondents repeatedly called Harwood and were told the matter would be cleared up soon.

On June 7, 1958, respondents again called Harwood and were informed that he had not yet been able to clear title and needed another 60-90 days. Respondents then demanded the return of their money and stated they would look for property elsewhere. Harwood said: "Very well; I will return your money as soon as I get it together." Harwood repeated his promise on June 15. Respondents in reliance thereon, negotiated for another piece of property and made a down payment of $600. On June 20, the respondents sent

Harwood the following telegram: "Since you are unable to deliver clear title to Parcel 25 in Palomar Park, must have 3225 we paid per purchase agreement. You agreed to refund this in phone conversations of June 7th and 15th." On July 29, 1958, respondents filed their complaint in this action for the return of their $3,225. Appellants in their answer pleaded the letter of September 2, 1957, as a modification of the contract. At the time of the trial, appellants still did not have clear title to the property in question.

The trial court found the facts as stated above, and concluded that in July, 1957, the appellants were in material breach of the contract by virtue of their inability to convey marketable title; that the respondents had performed all the covenants and conditions of the agreement; that the purported agreement of September 2, 1957, was lacking in consideration and therefore invalid; and that the appellants were estopped to deny their oral agreement to rescind made in June, 1958, because of the respondents' change of position in reliance thereon.

■■■ The first contention on appeal is that the evidence does not support the findings. There is no merit in this argument. The only question before us is whether there is any substantial evidence which will support the findings, and all reasonable inferences must be indulged to uphold them. (*Holmberg* v. *Marsden*, 39 Cal.2d 592, 596 [248 P.2d 417].) This rule applies even though there is a conflict in the evidence and conflicting inferences may be drawn therefrom. (*Rice* v. *California Lutheran Hospital*, 27 Cal.2d 296 [163 P.2d 860]; *Burke* v. *Chrostowski*, 46 Cal.2d 444 [296 P.2d 545].)

In the instant case, the only conflict in the evidence was appellant A. J. Harwood's denial of the telephone conversations of June 7 and June 15 in which he agreed to return the respondents' money. The credibility of witnesses is a matter for the sound discretion of the trial court. There is, therefore, substantial evidence to support the finding that on June 7, 1958, the parties entered into an oral contract of rescission. There is no question that an oral mutual contract of rescission of a previous realty contract is valid (*San Roque Properties, Inc.* v. *Pierce*, 18 Cal.App.2d 379 [63 P.2d 1198]; *Sass* v. *Hank*, 108 Cal.App.2d 207 [238 P.2d 652]), and that the fact of its having been done can be established by the acts and declarations of the parties (*Haber-*

*man* v. *Sawall*, 72 Cal.App. 576, 581 [237 P.2d 776]). It is not necessary to prove that the parties expressed their intent to rescind in so many words; mutual assent may be inferred from and manifested by their conduct (*Cincotta* v. *Catania*, 95 Cal.App. 99 [272 P. 330]).

Appellants' argument also ignores the fact that their letter of September 2, 1957, admits their inability to convey a clear title at that time and thus constitutes an admission of breach. ▇ The failure to tender marketable title at the time the contract matures is a material breach of the contract and grants the purchaser the right to rescind, the right to refuse to make further payments and allows him to recover any amount paid (*Milton Realty Co.* v. *Butterfield*, 87 Cal.App. 772 [262 P. 419]). It makes no difference if the seller has made an attempt to clear title at the time he defaults (*Garachico* v. *Faure*, 218 Cal. 32 [21 P.2d 111]). ▇ Furthermore, the rule is that if one finding, sustained by sufficient evidence will support the judgment, it will be presumed that the judgment was predicated on such finding, and the judgment will be affirmed (*Spaulding* v. *Jones*, 117 Cal.App.2d 541, 554 [256 P.2d 637]). In the instant case, there is no question that the findings are amply supported by the evidence.

While the judgment could be affirmed on this ground alone, we deem it our duty to briefly dispose of some of the remaining arguments raised by the appellants. ▇ The next argument is that the court erroneously concluded that the purported agreement of September 2, 1957, was not supported by consideration. Appellants argue that the letter of September 2, 1957, was in law a part of the original contract. However, precisely that argument was made and rejected in *Main St. & Agr. Park R.R. Co.* v. *Los Angeles Traction Co.*, 129 Cal. 301 [61 P. 937], which established the rule that to enforce any modification to a contract such as an extension of time, there must be an additional consideration to support the modifying contract. In the September 2 letter, the only consideration from appellants was their agreement to make no further payments. However, after the July tender, the appellants already had a right to refuse to make further payments. (*Milton Realty Co.* v. *Butterfield, supra.*) (Even assuming *arguendo* that there was technical consideration, the uncontroverted evidence shows that the appellants promised to convey marketable title within 60 days of September 2, and were unable to do so.)

█ The final argument is that the court erroneously admitted oral evidence to show that the parties intended title to pass when the purchasers had paid up to $4,000 on the principal. The agreement here did not specify when title was to pass; it only specified when title was to be perfected.

█ It is well established that evidence is admissible to prove the existence of a separate oral agreement as to any matter on which the document is silent and which is not inconsistent with its terms (*Buckner* v. *A. Leon & Co.*, 204 Cal. 225 [267 P. 693]; Code of Civ. Proc., § 1856).

We conclude the judgment finds ample support in the record before us.

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.

A petition for a rehearing was denied October 19, 1960, and appellants' petition for a hearing by the Supreme Court was denied November 16, 1960.