[Civ. No. 19019. First Dist., Div. Two. Dec. 19, 1960.]

JAMES RUBINO et al., Respondents, v. JAMES PRAY, Appellant.

Byers & Jacobs for Appellant.

Rankin, Oneal, Luckhardt & Center and J. E. Longinotti for Respondents.

KAUFMAN, P. J.—This is an appeal by the buyer from a judgment in favor of the sellers in an action for damages for breach of a written agreement.

Appellant contends that: (1) The evidence was insufficient to support the finding that the parties entered into a contract. (2) The findings of fact based on a common count do not support the conclusions of law or the judgment. (3) The award of damages was improper.

The record reveals the following facts: Respondent, Ebbe Rubino, operated a combination toy, phonograph, stationery and jewelry store known as Rubino's Appliance, which she owned with her husband, the respondent, James Rubino. Respondents' store was in the city of Gilroy, about one-half block from a sporting goods store known as Jim's Sport Shop, owned and operated by the appellant.

Early in 1956, Mrs. Rubino asked the appellant if he was interested in buying her business. The appellant refused. In November 1956, the parties held preliminary discussions about the sale of the respondents' business. The appellant indicated that he was interested in some of the stock carried by the respondents; the respondents indicated that they were not interested in selling the business until after the Christmas shopping period. A few days later, without notifying the respondents, the appellant obtained a written lease from the owner of the premises which were occupied by the respondents. After Christmas, the appellant called on Mrs. Rubino to discuss his offer of purchase. She postponed the discussion as she intended to take her annual inventory. On January 21, 1957, the parties met at the office of Mr. Piedmont, a real estate broker, and came to an agreement. At this time, the appellant,

to insure his good faith and bind the agreement, deposited $100 with Mr. Piedmont. Mr. Piedmont was instructed to prepare a writing to evidence the agreement. A form was prepared and submitted to the parties but was found to be inadequate. The appellant then requested permission to draw an agreement. He did so and presented this agreement to Mrs. Rubino who rejected it and told him she would have another form drawn herself. Several days later, she presented the appellant with a form. The appellant took a copy of this agreement for study and consideration.

The agreement provided that the appellant was to purchase the respondents' store and business, together with certain stock-in-trade, including phonograph records, toys and heater, and to take possession of the premises on March 1, 1957. The purchase price was to be the inventory value of the 45 and $33\frac{1}{3}$-r.p.m. records and toys, based on the current price of the day, March 1, 1957, or code as marked, provided they were in good shape. If there were any soiled items, the price was to be agreed on by the parties; the appellant was to pay $75 for the heater. The agreement further provided that the appellant was to take all 78 r.p.m. records on consignment and sell them for the respondents. The purchase price was to be paid in six equal parts, the first to be paid on the completion of the taking of the inventory and determination of price, and the remaining payments were to be made in five consecutive months with interest at the rate of 6 per cent per annum.

A few days later, toward the end of February, the appellant called at the respondents' store and told Mrs. Rubino that he had been advised by a wholesaler it was not wise for him to buy the 45-r.p.m. records and the $33\frac{1}{3}$-r.p.m. records which were dated earlier than January 1954, and that, therefore, he wanted to change the agreement. While Mrs. Rubino held the paper, the appellant changed the agreement to read that he was to take the 78-r.p.m., 45-r.p.m. and $33\frac{1}{3}$-r.p.m. records, labeled and dated prior to January 1954, on consignment and sell them on behalf of the respondents at current retail prices, and initialed this change. The parties made a further change relating to interest payments toward the bottom of the first page. The appellant then placed his full signature at the point where he made the changes at the bottom of the first page. Mrs. Rubino then signed at the end of the second change and at the end of the writing. While she was doing this, the appellant left her and busied himself with some other person in the store. The appellant had advised Mrs. Rubino the agreement,

with the inserted changes, was acceptable to him. Mrs. Rubino deemed the agreement fully executed.

A few days thereafter, the appellant took possession of the store, toys and the records. On March 25, 1957, the appellant had paid the respondents $300 and on May 1, 1957, another $300. Thereafter, he made no further payments. The appellant did not assist the respondents in taking inventory of the store. The record inventory was begun on February 28 and completed in two days. Mrs. Rubino asked the appellant to help her with the record inventory but he did not do so as he was in and out of the store during these two days moving shelving and other items in and was fully aware that the record inventory was being taken. A copy of the same was given to him which he accepted without comment or objection. The next day, he engaged a Mr. Salazar to assist Mrs. Rubino in taking the toy inventory. When the toy inventory was complete, Mrs. Rubino again gave the appellant a copy of the inventory which he again accepted without comment or objection. Between February 28 and March 3, appellant moved all of his stock and fixtures into the store. Respondent had concluded her operation of the store and the appellant had full possession on March 3.

Appellant moved all the toys from the old shelves to his new shelves. The appellant kept all the records as well as all the toys and made them available for sale to his customers until May 1957. From the time appellant took possession of the toys and records in March 1957, until shortly after October 23, 1957, the respondents received no notice or claim of rejection of either toys or records from the appellant.

In May 1957, Mrs. Rubino pressed the appellant for an additional payment. The appellant then asked her and her husband to meet him at the store in the evening. At this meeting, the appellant offered to pay the respondents 3 cents for each 78-r.p.m. record which he had sold for them. This offer was made after the empty sleeves had been counted and it was determined that the appellant had sold 1,656 of the 78-r.p.m. records and 16 of the 45 r.p.m. records. The respondents refused to accept the tender of 3 cents per record and reminded the appellant he had agreed to sell the 78-r.p.m. records at the current prices and to pay them 17 cents for each record sold. The first notice of appellant's rejection of records and toys that the respondents received was in October 1957, when the respondents' attorney advised them he had received a letter from appellant's attorney written in response to a letter of demand for further payment in accordance with the

agreement. The complaint in this action filed on May 8, 1958, alleged breach of the written contract and requested damages in the amount of $3,160.61 plus $500 for attorneys' fees [as provided in the agreement]. The appellant denied the allegations of the complaint and filed a cross-complaint alleging that the value of the merchandise he had received was $722.34 and had been paid in full, and that the respondents owed him $57.16. The matter was tried by the court without a jury.

The trial court found that in February 1957, the parties entered into an agreement in writing, for the sale of the respondents' business, together with certain stock-in-trade, including phonograph records, toys and a heater, the purchase price to be determined as follows: (1) for all 45-r.p.m. and 33⅓-r.p.m. phonograph records labeled and dated after January 1954, at the inventory value based on the current prices as of March 1, 1957, or as marked, as the cost to the plaintiffs; provided that said records were in good condition (if any of the records were soiled, then such soils were to be at a price to be agreed upon by the parties); (2) for all toys at the inventory value based on the current price as of March 1, 1957, or as marked as the cost to the plaintiffs, except as to any soils whose price was to be agreed upon by the parties. That under said agreement, the appellant further agreed to pay to the respondents the sum of $75 for the heater, and to take all 78-r.p.m. phonograph records and all 45-r.p.m. and 33⅓-r.p.m. phonograph records labeled and dated prior to January 1954, on consignment, to be sold for and on behalf of the respondents at current retail prices.

The trial court further found that the respondents had performed their part of the written agreement and that the appellant had breached the agreement in that he has failed and refused to pay $2,380 on account of purchase price of said property and has further failed to pay the sum of $120 on account of sales of consigned phonograph records; that the appellant had paid $600 on account of the purchase price for the said phonograph records and toys and $75 for the heater, and that he was entitled to an offset of $52.94 as a credit. The trial court denied the relief requested by appellant's cross-complaint, concluded that the respondents were entitled to judgment in the sum of $2,500 above all credits and setoffs, and $500 for attorneys' fees, and entered judgment accordingly.

The first argument on appeal is that the evidence was insufficient to support the findings that the parties entered

into a contract, as the evidence does not support the finding that the parties entered into a written agreement in February 1957. The argument is based on the fact that the appellant did not sign the document in question at the end but at the bottom of the first page after the second interlineation.

In the instant case, the question of whether the appellant's signature bound him to the entire agreement is obviously a fact question. A signature does not have to appear at the end of an agreement to be valid. (*Western Title Ins. etc. Co.* v. *Bartolacelli,* 124 Cal.App.2d 690 [269 P.2d 165].) The evidence as to the particular intent of the parties was conflicting. On appeal, the findings of the trier of fact as to such matters will not be disturbed unless it can be held that they are not supported by substantial evidence in the record. (*Albertson* v. *Raboff,* 185 Cal.App.2d 372 [8 Cal.Rptr. 398]; *Post* v. *Palpar, Inc.,* 184 Cal.App.2d 676 [7 Cal.Rptr. 823].) The appellate court must accept as established all facts and inferences favorable to the respondent which find substantial support in the evidence. (*New* v. *New,* 148 Cal.App.2d 372 [306 P.2d 987].)

From the above review of the evidence, it is obvious that the evidence is more than ample to sustain the court's finding of a written agreement between the parties. At the trial, the appellant admitted that the agreement as changed and interlineated by him was acceptable to him. Even assuming *arguendo* that the trial court erred in its conclusion as to a written agreement, there is more than ample evidence of an oral contract partly performed and pursuant to which, a part payment was made.

Although the rule is that if one finding, if supported by sufficient evidence, will support the judgment, it will be presumed that the judgment was predicated on such finding and the judgment affirmed (*Spaulding* v. *Jones,* 117 Cal.App. 2d 541 [256 P.2d 673]), we will briefly discuss the remaining contentions raised by the appellant.

The second argument on appeal is that the findings of fact based on a common count do not support either the conclusions of law or the judgment. In the first place, as pointed out above, this finding is not essential. In the second place, the contract in question had been fully performed and nothing remained to be done except the payment of money. Thus, the respondents in their complaint could declare generally on the common count or as they did, join such count with one on the express contract between them, and the

court could have found on either count. (*Carnation Co.* v. *Marcevich,* 186 Cal.App.2d 618 [9 Cal.Rptr. 80], 1 Civ. 18923, filed November 23, 1960.)

 The final argument is that the amount of damages is improper as it is not supported by the evidence and is arbitrary and conflicting. As indicated above, the trial court found that the respondents were entitled to judgment in the amount of $2,500 above all credits and setoffs. The appellant argues that this amount must be reduced to $891.62.

The contract provided that the purchase price was to be the inventory value of the toys and records based on "the current prices of the day or code as marked . . . as of March 1, 1957." The trial court's findings clearly indicate that the court interpreted the above to mean "the inventory value based on the current prices as of March 1, 1957."

The court's finding that the total inventory value of the toys was $1,226.62 was apparently based on the inventory value as listed in the respondents' inventory list. As to the inventory value of the post-1954 phonograph records which the trial court found to be $1,806.32, the only evidence on this matter was the testimony of Mrs. Rubino to the effect that the inventory value of these records was $2,425.25. Apparently, the trial court chose not to believe this testimony, to the advantage of the appellant.

Appellant also argues that there is a conflict in the findings as the trial court found two different values for the same merchandise. There is no merit in this argument.

The trial court arrived at the figure of $2,500 due to the respondents from the appellant by adding the amount the appellant had refused to pay on the purchase price ($2,380) to the amount the appellant owed the respondents for the sales of the consigned phonograph records ($120). In the early summer of 1958, the respondents repossessed all the 78-r.p.m. and the 45-r.p.m. records dated before January 1954, which had been left on consignment with appellant. The respondents determined that there were 230 of the 78-r.p.m. records missing, which, together with the 1,656 records sold by the appellant, totaled 1,886 records, for which the defendant was accountable. The respondents further found that in addition to the 45-r.p.m. records sold by the appellant, there were 100 of the 45-r.p.m. records missing so that the defendant was accountable to them for 116 45-r.p.m. records. The appellant testified that he had made cash payments to the respondents

for records sold on consignment but had no precise records about these transactions.

As to the records left on consignment, it appears that the trial court believed the testimony of appellant's witness that the price for these was approximately 6 cents per record. The court found that the appellant had sold about 2,000 of these records to customers and had not paid the respondents. The record indicates that the appellant did not participate in the inventory of the phonograph records or object to it until a much later date. It is clear from the findings that the trial court determined that the total contract price was $3,227.94; after subtracting all credits and offsets, the appellant still owed $2,500. In view of the confused and conflicting evidence before it, we think the trial court did a remarkable job of arriving at a fair result on the precise amount of damages. The errors complained of are minimal and in the appellant's favor. No prejudicial error appearing in the record, the judgment must be affirmed.

Judgment affirmed.

Draper, J., and Shoemaker, J., concurred.