**BEST BUILDING COMPANY, Appellant,**

v.

**Louis SIKES et ux., Appellees.**

**No. 16655.**

Court of Civil Appeals of Texas.

Fort Worth.

July 23, 1965.

Rehearing Denied Sept. 17, 1965.

Simon & Simon, Fort Worth, Humphrey, Gibson & Darden and Lee Humphrey, Wichita Falls, for appellant.

Eggers, Sherrill & Pace and Robert K. Pace, Wichita Falls, Spence, Martin & Richie and Howard Martin, Wichita Falls, for appellees.

MASSEY, Chief Justice.

Our holding on the instant appeal is that the plaintiff below was entitled to exercise his option to purchase a certain tract of land, termed Tract 2-B, as of the time that he attempted to do so, and—since his right to exact specific performance by the defendants was not inhibited by the Statute of Frauds—he was alternatively entitled to the damages sustained by reason of the defendants' refusal to make conveyance. Our further holding is that plaintiff was entitled to exercise his option to purchase Tract 3 (dependent upon exercise of the option to acquire Tract 2-B) from and after the time defendants refused to honor the first option, but that since the option period expired without any timely and proper attempt by plaintiff to exercise such, he was not entitled to any damages because of a failure to obtain it.

Judgment of the trial court is therefore in part affirmed and in part reversed and rendered.

In this case the Best Building Company (as purchaser) was the plaintiff and Louis Sikes et ux. the defendants. Suit began as one for specific performance to convey land or for damages for defendants' breach. At "election" time plaintiff actually sought damages alone. Hereinafter, for convenience, plaintiff will often be referred to as "he" or treated as an individual. Trial was before the court without a jury. Judgment was rendered for defendants in denial of all relief for which plaintiff sued. Plaintiff appealed.

Defendants were the owners of land(s) contemplated for development as subdivision(s). They desired orderly residential development. In certain tracts, hereinafter referred to as Tracts 1, 2-A, 2-B and 3, the plaintiff's active participation was enlisted. At the time the parties' contract was executed Tracts 2-B and 3 had not been plotted or dedicated. Plaintiff, through his attorney, prepared a contract relative to property interests in the aforesaid tracts, acquired and/or contemplated to be acquired from defendants.

Not at issue is any question whether plaintiff was entitled to acquire Tracts 1 and 2-A. He did acquire them. At issue is plaintiff's right at material times to acquire Tracts 2-B and 3, considered severally.

Any right plaintiff had to acquire Tract 2-B was obtained pursuant to contract. The language "balance of the hereinafter described property", in the portion of the contract we quote, relates to what we refer to as Tract 2-B: "In the event that the Purchasers, within a two year period from this date (February 15, 1958), have acquired and paid for a minimum of 24 acres (Tract 2-A) at the $2,000.00 per acre price, then such Purchasers shall have an

additional two-year period within which to elect to develop the *balance of the hereinafter described property,* * * *." (Emphasis supplied.) Other language clarified parties' intent that right to acquire Tract 2-B by plaintiff likewise depended upon such development.

Constructively, the contract provided that the plaintiff's right to acquire Tract 2-B should exist and persist for a period of four years from February 15, 1958, or until and including February 15, 1962, conditioned and contingent upon his having paid for the "minimum of 24 acres" (Tract 2-A) out of the fully designated and described entire tract (2-A and 2-B) on or prior to expiration of the first two-year period subsequent to February 15, 1958. Though he may have fully performed all prerequisites which would entitle him to demand performance upon tender of the agreed consideration, plaintiff had the right to delay the tender which would incur the defendants' obligation to convey until the last day of the four-year period, and the further right to forego the exercise of his option to acquire the property without penalty. If plaintiff's option right actually was additionally dependent upon his prior development of Tract 2-A, the condition was satisfied. What is stated in this paragraph is not at issue and it appears the parties agree it is correct.

At issue is whether plaintiff's option right to Tract 2-B had vanished because of his action and conduct with reference to the entire contract of the parties prior to the important date of January 15, 1962. On that date he made known to defendants his desire to demand a conveyance of Tract 2-B in accordance with the option so to do, and to tender in full payment therefor the agreed consideration (of $2,000.00 per acre). By stipulation of the parties it was agreed that such occurred, and that in response the defendants advised plaintiff that if made, such demand and tender would nevertheless be refused by them in any event.

We may safely assume that after plaintiff had acquired Tract 2-A he was developing it as a residential subdivision in 1961. During that year plaintiff discovered a prospective purchaser for 10 acres of land out of Tract 3. As will be more specifically discussed at a later stage of this opinion the parties' contract included a plaintiff's option to purchase Tract 3, said option being conditioned upon plaintiff having theretofore "acquired and developed" Tract 2-B. If plaintiff could obtain title to Tract 3, or the 10 acres therein his purchaser desired, he was in position to take a substantial profit. Said purchaser intended to devote the 10 acres to a commercial use. There were no restrictions as to such use in the contract which is the subject of dispute, but when the defendants learned that such was the use intended they decided that they would do all things legally possible to prevent it.

Plaintiff considered the "acquired and developed" language aforementioned to be a stumbling-block in his course toward the goal of obtaining the 10 acres in question, or any part of Tract 3. There were negotiations between the parties which we have concluded amounted to no more than offers and counter-offers in no way affecting the existing written contract. Plaintiff lost the deal with his prospective purchaser and his anticipated profit.

In September of 1961 plaintiff brought suit against the defendants. He prayed for "specific performance of the Contract",—without reference to distinction to be made between the separate option rights thereunder as to Tract 2-B and Tract 3,—plus "damages for Defendants' breach" of contract. Of course trial had not yet occurred, but by reference to the statement of facts it is to be observed that as of this time plaintiff had never attempted any independent exercise of his option right to Tract 2-B.

Our conclusion, as heretofore indicated, is that the plaintiff's option right to acquire Tract 2-B persisted at and after the time

suit was brought and for several months thereafter and that it was an option which necessarily must be exercised independently of any exercise of his option right to Tract 3. Plaintiff evidently arrived at the same conclusion prior to the time for expiration of the option period, for we are of the opinion that his action taken, January 15, 1962 (heretofore referred to), was the first and only proper attempt to independently exercise any right of option.

In the court's findings of fact was included a finding that the value, per acre, of Tract 2-B, on or about January 15, 1962, was $3,000.00. The price to be paid therefor, under the contract, was $2,000.00 per acre. There having been 30.20 acres of land in Tract 2-B the amount of plaintiff's damages because of defendants' failure and refusal to deliver it would be $30,200.00.

We have concluded that plaintiff is entitled to such damages because of defendants' failure to make conveyance according to plaintiff's communication to them on January 15, 1962. The effect thereof was that plaintiff made a valid and effective attempt to exercise his right of option. We hold that the defendants breached their duty under that part of the contract which gave plaintiff the right to purchase Tract 2-B.

The parties were at cross-purposes on and prior to that time. It may well be that it was by reason thereof that defendants failed to perceive plaintiff's right. Plaintiff had embroiled the defendants in litigation. He was no doubt angered at the refusal of defendants to make conveyance of the ten acres out of Tract 3. Defendants were angry also. The matter of damages flowing from the failure to obtain Tract 2-B was relatively an inconsequential part of plaintiff's suit. Yet plaintiff had, for a valuable consideration, obtained from the defendants the right to exercise an option to acquire Tract 2-B and plaintiff did attempt to exercise such option within the specified period. Plaintiff owned and possessed such right pursuant to contract supported by consideration delivered. The right was vested in him. It persisted for the period contracted, to exercise or not as he might see fit, because he had satisfied all contingencies upon which the right depended. The value of such right consisted in the privilege to exercise it or not, at his election. Corsicana Petroleum Co. v. Owens, 110 Tex. 568, 571, 222 S.W. 154 (1920).

Any modification, even to the extent of discharge, of an existing contract must be supported by a fresh consideration. There was no such consideration. Under this general rule plaintiff's option to purchase Tract 2-B was in full force and effect on the date of its attempted exercise. 13 Tex.Jur.2d, P. 499, "Contracts", § 268, "Necessity for new consideration". Nothing in the record shows any change of condition nor act of the defendants impairing plaintiff's right to acquire Tract 2-B prior to date of January 15, 1962. Estoppel was neither plead nor proved by the defendants, even equitable estoppel. Had defendants delivered the land to plaintiff they would not have sustained any prejudice. There was a $1,000.00 per acre difference in value on January 15th as compared with the contract price, but the possibility of such enhancement in value of the tract was clearly within the contemplation of the parties in the contract itself.

In support of the propriety of their refusal to honor plaintiff's exercise of the option defendants present contentions bearing upon effect of counter-offers, revocation or rejection of offers, etc., none of which we consider sound. Neither the contentions nor the authorities cited in support thereof have a bearing upon a situation where, as in the instant case, the optionee had purchased and paid for his right of option and possessed same as a property right. That plaintiff's suit existed at the time had no effect upon that right. Neither would that fact foreclose the efficacy of plaintiff's attempt to exercise it. No distinction in the legal situation is to be

made because of the pendency of the suit. That plaintiff never made offer to dismiss his suit or abandon the claims asserted therein would have no legal significance.

■ The defendants contend that in any event the contract, as applied to plaintiff's option on Tract 2-B, was unenforceable under the Statute of Frauds. This they plead. In connection therewith defendants refer to a paragraph of the contract reading as follows: "As a special condition of this Contract, the Sellers expressly agree and obligate themselves to dedicate a sufficient area for park purposes to meet the requirements of the City of Wichita Falls as to any subdivision of the land herein purchased, or that may hereafter be purchased under the terms of this agreement. * * *" In this connection the defendants aver that what is meant by the language is that pursuant to the conveyance of Tract 2-B they would have the right, indeed the obligation, to carve out of the same whatever amount of acreage the City of Wichita Falls demanded be dedicated for park purposes,— conveying to plaintiff only the remaining land. Hence, say defendants, the land to be acquired by the plaintiff upon proper exercise of the option could not be Tract 2-B (described by metes and bounds) but something different—land which the court in its judgment would be powerless to so describe that plaintiff could be placed in possession thereof under a writ because there could be no adequate description of the land to be delivered. We hold that the language quoted does not say this. Indeed, nothing required plaintiff to subdivide Tract 2-B. The language did not hamper plaintiff's right to have the whole of Tract 2-B. Indeed, and for the purpose we assume that it is an obligation that plaintiff would not be entitled to waive, the language in question does not specify that acreage to be delivered to the City of Wichita Falls must be carved out of the land defendants had optioned to the plaintiff. It might have been acreage on adjoining land (admittedly defendants') or even on land considerably removed, which defendants would be obliged to dedicate

for municipal purposes. The Statute of Frauds may not be used to inhibit plaintiff's right to enforce the contract or to obtain damages because of its breach.

■ Furthermore, it is not to be disregarded that plaintiff had "developed" Tract 2-A (he had likewise developed Tract 1) as well as having delivered full compensation therefor, all pursuant to the obligations imposed upon him under the contract. Defendants had performed their own obligations under the contract up to the time they refused to honor plaintiff's attempted exercise of this option to acquire Tract 2-B. It might properly be said that as to Tract 1 and Tract 2-A, as well as to the option to Tract 2-B, plaintiff had fully performed. The defendants, having knowingly accepted benefits and partly performing, were foreclosed from any defeat of plaintiff's right through use of the Statute of Frauds. Callahan v. Walsh, 49 S.W.2d 945 (San Antonio Civ.App., 1932, error refused). The opinion also constitutes authority for our opinion that the premises to be conveyed were sufficiently identified by the parties' contract. Other cases to this effect are Taylor v. Lester, 12 S.W.2d 1097 (Austin Civ.App., 1928, error refused), cited in respect to the question in Stekoll Production Co. v. Hamilton, 152 Tex. 182, 255 S.W.2d 187, 191 (1953); and Tiller v. Fields, 301 S.W.2d 185 (Texarkana Civ.App., 1957, no writ hist.). It appears that existence in one party of an unqualified right of determination or selection of an amount and location of premises (within an area certainly ascertainable) meets the requirements of the Statute of Frauds where there is no necessity of any further agreement or approval by the other party.

Relative to the contractual provision under which plaintiff claims he was entitled to acquire Tract 3, the agreement reads: "In the event the Purchaser *acquires and develops* the foregoing * * * (Tracts 2-A and 2-B) in accordance with the terms of this contract, then he shall likewise have the exclusive right to acquire * * * on the

same terms \* \* \*" followed by a description of Tract 3. (Emphasis supplied.)

Simple contractual construction leads to the natural conclusion that the written language quoted, taken into consideration with the option language relative to Tract 2-B, had the basic meaning that plaintiff should have the right to acquire Tract 3 under the condition that Tract 2-B be first acquired by him, and that the period during which his option right (to Tract 3) persisted would be for a period of six years from February 15, 1958 to February 15, 1964. As applied to that portion of the contract which reads: "In the event the Purchaser acquires and develops \* \* \*" a more complicated and difficult problem is presented. If the phrase has no meaning then plaintiff would obtain the right to purchase Tract 3 provided he purchased Tract 2-B (he had already purchased Tract 2-A) or because of his attempt to exercise his option right to do so within the applicable time limitation. If it had any meaning it would necessarily be that plaintiff was obliged to satisfy some additional condition precedent and that his option right would be thereupon contingent.

■ The trial court, on the strength of extrinsic evidence received for the purpose of ascertaining the meaning of the phrase "acquire and develop", and more particularly relative to the meaning of "develop" as therein embodied, found as a matter of law that "develop" had the meaning found in its findings of fact. Therein the court found: "At the time the Option was executed and delivered, the parties thereto contemplated that as used therein with respect of Tract 2b, the term 'develop' would include the following acts, to-wit: the preparation and recordation of a plat subdividing the tract into lots and blocks and dedicating streets and alleys; the cutting, paving and curbing of the streets; and the installation of utility lines, including electricity, gas, water and sewer, at points adjacent to but not necessarily on the various lots; the particular size, number and location of the lots, blocks, streets and alleys and the manner and means of constructing the streets and installing the utility lines being left to the good faith judgment of the developing purchaser or its successors in interest."

■ If the term "develop" (in the phrase "acquire and develop") did not have the meaning ascribed to it by the court it would be ambiguous. If ambiguous, resort to extraneous evidence was proper. Such as was received was adequate to support the determination made by the court in its findings of fact. In this connection see General Ins. Corporation v. Laney, 224 S.W.2d 746, 751 (Fort Worth Civ.App., 1949, no writ hist.), cited with approval in Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193 (Tex.Sup., 1962); 13 Tex.Jur.2d, P. 261 et seq., and § 109 et seq., "Contracts" under Sub. IV, "Construction of Agreement"; Words & Phrases, Perm. Ed., Vol. 20, "Improved Real Estate", "Improvement", etc.

■ Reverting to the contractual provisions, therefore, it plainly appears that as a condition precedent to any right on the part of the plaintiff to acquire Tract 3 he was obliged not only to acquire but also to "develop" Tract 2 (collectively—Tracts 2-A and 2-B). Although plaintiff did "develop" Tract 2-A, he never did likewise as to Tract 2-B. Had defendants honored his attempt to exercise the option to acquire Tract 2-B he might have done so, but of course he was unable to when the defendants denied him. The trial court's judgment as applied to Tract 3 may not be sustained on the ground that plaintiff had not "developed" Tract 2-B, but it is properly sustained on the ground that plaintiff was never relieved of the duty to at least attempt to exercise his option to Tract 3—which was never attempted.

From and after January 15, 1962—and until February 15, 1964—plaintiff was vested with the right to exercise his option to acquire Tract 3. The prerequisite requirement that plaintiff "develop" Tract 2-B could no longer have force and effect after

defendants refused to convey Tract 2-B to plaintiff in order that he might develop it. See 157 A.L.R. 1311, Anno: "When optionee's delay in exercising option excused"; 37 Tex. Digest, Vendor and Purchaser, ☞18(3), "Exercise of option"; Jones v. Gibbs, 133 Tex. 627, 130 S.W.2d 265, 131 S.W.2d 957 (1939).

Remaining, however, was action necessary to be taken by plaintiff to actually exercise his right of option. He had the right to exercise it or not, according to whether he so desired,—to and including February 15, 1964. Plaintiff's suit still pended for trial on said date. However, neither in his pleadings nor in his evidence does it appear that on or after January 15, 1962 (when his right to exercise the option to acquire Tract 3 became vested) did he ever seek specific performance by the defendants of their obligations under his option to Tract 3.

His pleading sought damages because of a breach by defendants, not specific performance. His proof evidenced demands for such specific performance, but the dates of the demands as so proved antedated January 15, 1962. On those dates his rights to exercise the option did not exist for they were born January 15, 1962 in the defendants' refusal to honor plaintiff's attempt to exercise his option as to Tract 2-B.

Judgment is affirmed in so far as it denies plaintiff any damages because of his failure to acquire Tract 3. Judgment is reversed and rendered otherwise, and as a judgment against defendants the plaintiff is awarded $30,200.00 in damages because of defendants' refusal to make conveyance of the land embraced in Tract 2-B. Interest on plaintiff's judgment shall date from January 15, 1962.