Frank E. HARVARD, Appellant (Defendant below),

v.

Alan D. ANDERSON and Arnold G. Vezina, Appellees (Plaintiffs below).

No. 4313.

Supreme Court of Wyoming.

July 30, 1974.

Rehearing Denied Sept. 4, 1974.

---

Before PARKER, C. J., and McEWAN, GUTHRIE, McINTYRE, and Mc-CLINTOCK, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

Plaintiffs, Alan D. Anderson and Arnold G. Vezina, brought an action for specific performance against defendant Frank E. Harvard on three instruments, two options to purchase real property [1] and an "Agreement" relating to the property, the complaint asserting that all right, title, and interest in the mentioned instruments had been assigned to them by the optionees, whose tender to defendant had been refused, and that plaintiffs offered to pay the optionor the purchase price for the property. The defendant denied the petition generally and asserted there had been no consideration for the agreement.

The salient facts furnishing the rationale for the judgment are as follows. On January 7, 1971, for the purported consideration of one dollar the defendant, Frank E. Harvard, gave his son and daughter-in-law, Fred and Marie Harvard, a one-year option to purchase real property for $30,000 in cash on a form used by the Farmers Home Administration. This option was witnessed but unacknowledged. An instrument almost identical to it on a similar printed form covering the same property,[2] dated the same, but in the presence of a different witness, was acknowledged before a notary public on August 9, 1971. On November 11, 1971, the defendant, his son, and daughter-in-law, signed the following agreement for which there was no money consideration given:

"November 11, 1971

"AGREEMENT

"We, Fred Harvard and Marie Harvard, agree to pay Frank E. Harvard, Fifteen

Harold E. Meier, Meier & Gist, Lander, for appellant.

E. L. McCrary and Robert H. McCrary, Casper, for appellees.

1. "Fr. Lot 5 Sec. 18; Lot 4, SE¼NE¼ Section 18 & Fr. SW¼NW¼ Sec. 17 T. 2 S. R. 1 E. [,] containing 94.66 acres. Fr. Lot 5 Section 18, T. 2 S. R. 1 E. [,] approx 9, acres[.]"

2. Certain portions previously in longhand were typed and some additions immaterial to the present appeal had been made.

Thousand and no/100 dollars ($15,000.-00) in cash on or before January 7, 1972, and balance at One Thousand and no/100 dollars ($1,000.00) a year until ($30,000.00) Thirty Thousand and no/100 dollars, has been paid.

"Property located:

"Approximately 9.66 acres, Fr. Lot 5, Sec. 18, Lot 4, SE¼NE¼, Section 18 & Fr. SW¼NW¼, Sec 17 T, 2S, R. 1 E. containing 94.66 acres.

/s/ Fred Harvard
Fred Harvard

/s/ Marie Harvard
Marie Harvard

/s/ Frank E. Harvard
Frank E. Harvard

"Personally appeared before me Fred Harvard, Marie Harvard and Frank E. Harvard, this 11th day of November, 1971.

/s/ Ted J. Sable
[SEAL]  NOTARY PUBLIC"

During the summer of 1971, the optionees made their application to the FHA but were rejected and a similar request to a local savings and loan association met a like fate. Later after the father told Marie that he hoped she and Fred didn't get the money as he didn't want to sell to them, Fred, who had applied for a farm loan and had been told that he could secure only $15,000 on a first mortgage, presented the previously mentioned agreement, which Fred, Frank, and Marie signed. Meanwhile, Fred had made tentative arrangements for the assignment of the option to plaintiffs who would enforce it. On January 7, 1972, Fred offered a $15,000 cashier's check authorized by the Wyoming Farm Loan through a Lander bank to defendant, who refused. On January 14, the assignment of the option was made by Fred and Marie to plaintiffs.

The cause was tried to the court, which held the "options" to be valid, decreeing that defendant deliver to plaintiffs a deed

for the real property, they to pay $15,000 less $2,500 for loss of use of the property plus $121.95 court costs ($12,378.05), and execute a "non-interest bearing" note for $15,000 payable in fifteen equal annual installments beginning January 7, 1974. The findings contained, inter alia, the following four statements, which are obviously the primary basis for the judgment:

"2. That the Defendant did indeed sign Exhibits 1, 2 and 3 [options and agreement], and the consideration of one dollar exchanged hands at the time of the signing of Exhibit No. 1.

"3. That Exhibit 3, which is the Agreement between Fred Harvard, Marie Harvard and Frank Harvard, altering the terms of payment from those set forth in Exhibit 1 and 2, constitutes an *amendment* to those exhibits.

"4. That there was adequate consideration for the option evidenced by Exhibits 1 and 2 and the *modification* therefore [sic] evidenced by Exhibit No. 3 and even if there had been no consideration at all, the Defendant failed to withdraw the option prior to its acceptance by the Plaintiffs['] predecessors as required by law.

"5. That the options in question are valid, binding and should have been accepted by the Defendant on January 7, 1972, at the time Fred Harvard delivered the sum of $15,000 in accordance with the *modification* of November 11, 1971, and specific performance should be granted to the Plaintiff in exchange for the payment of $15,000." (Emphasis supplied.)

Defendant here urges that the trial court erred in concluding that the one-dollar consideration given at the execution of the original option was sufficient consideration for the succeeding option and the agreement of November 11, 1971; in concluding that the option should have been accepted by the defendant on January 7, 1972, at a time and under terms contrary to those in the option; and in writing into the contract the elements of form, method, and

time of delivery of the deed as well as the time of possession of the property.

█ Fred was positive in his testimony that he gave his father one dollar in cash at the signing of the January 7, 1971, option but no money for the duplicate of that option notarized August 9 and none for the "Agreement" of November 11. Accordingly, there was substantial evidence that the option (and its notarized duplicate furnished to supply the requirements of a lending agency) was executed for a nominal cash consideration, a requisite to the validity of such a contract,[3] a point that defendant does not seriously challenge. Similarly, the evidence shows there was no separate cash consideration for the November 11 "Agreement."

The primary reasoning upon which the judgment was based is unclear, but it would appear that the court's fourth finding summarized its critical conclusions. We therefore direct our attention to it.

█ The first portion of the finding, "there was adequate consideration for the option evidenced by Exhibits 1 and 2 and the modification therefore [sic] evidenced by Exhibit No. 3," is difficult to understand and impossible to document since the undisputed evidence was that no cash consideration was given for the agreement itself—nor could it be logically argued that defendant received any benefit therefrom. Instead he would have been deprived of any adequate security, had substituted for the $30,000 cash to have been paid him under the option only $15,000 in cash, and been relegated to installment payments over a fifteen-year period for the balance of the purchase price. Moreover, under the provisions of the judgment, he was deprived of some $8,240 in interest (not including interest on interest) to which he was entitled under § 13–477, W.S.1957, C. 1965, 1973 Cum.Supp. If perchance there

was as a basis for this finding any thought that the agreement related back to the options, this could not be justified since it is well settled that an agreement altering a written contract to be binding must be based on consideration.[4]

██ If instead reliance was placed on the latter part of the fourth finding, "even if there had been no consideration at all, the Defendant failed to withdraw the option prior to its acceptance," insurmountable difficulties are encountered. There is, of course, authority for the principle that an option contract, although unsupported by consideration, may be accepted before it expires or is withdrawn, and acceptance will obviate the original want of consideration and make a binding contract as far as that objection is concerned. Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 138, 67 L.R.A. 571, 110 Am.St.Rep. 963; 8A Thompson, Real Property, p. 262 (1968 Repl.Vol.). However, for that rule to be applied, there must be an acceptance of the option. Clearly plaintiffs' predecessors in interest did not accept the options, but instead accepted a "modification" or "amendment," which was entirely different in terms. Nor, as explained above could there have been any modification without consideration, which was here lacking. Finally, there was no acceptance of the "Agreement" standing alone, since that gave no option without a reference back to the options and obligated defendant in no way.

The judgment is unsupported by substantial evidence, is contrary to law, and accordingly, must be reversed.

Reversed.

McCLINTOCK, Justice (dissenting).

Under the portion of the trial court's finding approved by this Court, Harvard for valuable and adequate consideration

3. Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 137, 67 L.R.A. 571, 110 Am.St.Rep. 963; Balla v. Ireland, 183 Or. 663, 196 P.2d 445, 449; 91 C.J.S. Vendor & Purchaser § 7.

4. Anthony Tile and Marble Company, Inc., v. H. L. Coble Construction Company, 16 N.C.

App. 740, 193 S.E.2d 338, 341; Panhandle Refining Co. v. Bennett, Tex.Civ.App., 13 S.W.2d 923; Best Building Company v. Sikes, Tex.Civ.App., 394 S.W.2d 57, 61; Post v. Palpar, Inc., 184 Cal.App.2d 676, 7 Cal.Rptr. 823, 826; 6 Corbin, Contracts, p. 188 (1962).

agreed to convey the farm to his son at any time within a year from January 7, 1971 upon payment of $30,000 cash. This agreement in writing contained all the provisions necessary for an irrevocable and enforceable option contract. It is not denied that there was no compliance with this contract but on November 11, 1971 exhibit 3 was signed by all the parties. This "agreement" the trial court finds "constitutes an amendment" to the original option agreement. The trial court also finds that there was adequate consideration for the modification as well as the original option but the majority, quite properly I think, rejects the finding as to consideration for the amendment.

However, it does not follow that there remained no offer which could be accepted by plaintiffs' predecessors so as to constitute a fully bilateral and enforceable contract. Until the amendment Harvard was without power to withdraw his offer since it had been based on consideration. After that amendment there remained an open offer, unsupported by consideration, and therefore subject to withdrawal at any time. However, on January 7, 1972, the date upon which plaintiffs' predecessors in interest tendered payment of the $15,000 then due in accordance with the terms of the amended offer, the offer had not been withdrawn and at that time there was brought into existence a contract for the sale and purchase of land.

The majority opinion concedes that there is substantial authority, including an early decision of this Court[1] that an option contract (offer) although unsupported by consideration may be accepted before it expires or is withdrawn. The majority state that there was no acceptance of this "agreement" standing alone and refuse to permit a reference back to the original option. While I concede that the writing of November 11, standing alone, is not a sufficient writing that its acceptance would permit the perfection of a binding contract, I think the majority in this respect ignore the finding of the trial court that it constituted an amendment. I think that this finding was supported by the evidence.

In my opinion, then, after November 11, 1971, and until January 7, 1972 there remained in effect a continuing offer, represented by the original option as amended as to terms of payment, unsupported by consideration and withdrawable at any time, but which as of January 7, 1972 had not been withdrawn and which was accepted by the acts of plaintiffs' predecessors on that date, as amply shown by documentary and oral evidence. I am in agreement with the legal propositions advanced in the majority opinion but must dissent from the application of these principles to the facts of this case. I would affirm the judgment of the district court.

---

1. Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 138, 67 L.R.A. 571, 110 Am.St.Rp. 963.